TearsoN, J.
In March, 1851, John Kelly, of the county of Orange, died, leaving a will, by which he appoints the defendant his .executor, and in which is contained the following clause:
“ Item, I give and bequeath to the Deaf and Dumb Institution, “ if it can be secured so that the principal will be secure, and “ nothing but the interest used; on these conditions, I give six “ thousand dollars, for the purpose of educating poor mutes, first “ of this county, when their parents is not able to educate them, “ if these conditions are complied with, I give and bequeath to the “ institution and thek successors in office forever.”
The plaintiffs were incorporated by the act of 1848, under the name and title of “ the President and Directors of the North Carolina Institute, for the education of the Deaf and Dumb;” and they allege they are the only institution for the education of the Deaf and Dumb in this State, and are well and popularly known as “ The Deaf and Dumb Institution, ” and by such name were known to the testator, and by him intended to be, and were designated and described in his will. The prayer is for the payment of the $6,000.
The defendant admits, that before and since the date of the will, the plaintiffs were engaged in the education of the Deaf and Dumb, and are the only institution in this State professing to give such instruction, and having the means and present ability to do it. But he avers there are in several of the States of this Union such institutions, of which one is in the State of Yirginia, and wan in successful operation at the date of the will. He also admits the plaintiffs were popularly called by the title of “The Deaf and Dumb Institution,” but he avers they were also called popularly “ The Deaf and Dumb Institute,” “ Deaf and Dumb *68 Asylum,” and “ Deaf and Dumb School.” He submits to pay under the decree of the Court, but suggests that there may be a deficiency of assets, making an account necessary, in the event of a declaration by the Court in favor of the plaintiffs’ right; but he avers he is advised the plaintiffs have rro right to the legacy, and that the same is void, for want of certainty in the description of the legatee, and he feels it to be his duty to rely on that ground of defence.
On the argument, our attention was called by the defendant’s counsel, to Taylor v. The American Bible Society, 7 Ire. Eq. 201; and it was urged that if that decision is not to be overruled, it decides this case. We are satisfied of that fact, but we are also entirely satisfied that the plaintiffs are entitled to the legacy. This makes it necessary to go into an examination of the cases, and to consider the reason of the thing.
There are two principles settled, and in fact admitted on all hands: 1, If there be a patent ambiguity in an instrument, the instrument must speak for itself, and evidence dehors cannot be resorted to ; 2, in cases of latent ambiguity, evidence dehors is not only competent, but necessary. The difficulty grows out of the application of these two principles, so as to say when a particular case falls under the operation of the one or of the other. To remove this difficulty it is necessary to go to the fountain, and trace these two streams down, and thereby avoid confounding them; for although they run close together, there is a plain, marked line between them, which has but seldom been crossed.
The fountain of the first, in the rule as to patent ambiguity, is, that it is a question of construction. Hence the instrument must speak for itself, and in case of doubt, no evidence outside can be called in aid; for the only purpose of construction is to find out what the instrument means, and that must depend upon what the instrument says.
The fountain of the second, in the rule as to latent ambiguity, is, that it is a question of identity — a fitting of the description to the person or thing, which can only be done by evidence outside or dehors the instrument; for how can any instrument identify a person or thing? It can describe, but the identification, the fitting of the description, can only be done by evidence dehorss
*69 in describing •pusis words so g||ieral as to take Trace these two streams from their fountains: 1, a patent ambiguity is, when there is some defect in the instrument, so as to call for a construction, in order to find out what it means; e. g. an instrument, in describing the subject to be conveyed, uses language so vague that no subject is indicated, although the Court under the maxim Uut res majis valeat quam pereat,” will try to give it a meaning, yet, if on its face it has none, the Court cannot give it one, without making a mil, which it has no right to do. Kea v. Robeson, 5 Ire. Eq. 373, is an instance. The donor gave all that Qnessuage and tenement, but did not say where it was, or give any further description: (it could only be accounted for by the fact that it was copied from a book of forms and the blanks were not filled up,) but it was not even intimated that evidence dehors could be offered to show tha&flibagiflS&epage and tenement intended was tire place wher^neT^f©-^vIlt^|t^lthoug'h such no doubt was the fact,) becausi^b«|^g a matter ofjjponstrnotion, the deed must speak for itself. Agai the objects of the donor’s bou:|i in an indefinite number of pefeons,iAq^(^Í^i^ included within the operation of the Statute^fl1, charitablej^es) cannot inform tire executor of the intended trust^S&dEr&a^t is void for uncertainty and the defect is patent on its face. A gift to the Bishop, u to be disposed of to such objects of benevolence and liberality as he shall most approve of ” is void, because of its uncertainty and generality, by reason whereof its execution cannot be enforced. Morris v. Bishop of Durham, 9 Ves. 399; 10 id. 522. So a gift of $1.000 to be applied to “• foreign missions and to the poor saints” —“ this to be disposed of and applied as my executor may think the p?'oper objects according to the Scriptures,” was held to be void upon the authority of the above case, because the trust was too general, and could not be enforced. Bridges v. Pleasants, 4 Ire. Eq. 27. Here the defect was patent on the face of the will.
2. A latent ambiguity is when, there being no defect in the description of either the person or thing on the face of the instrument, it becomes necessary to fit the description to the person or thing; in other words, to identify it. Here, as a matter of course, evidence dehors is admissible, because in fact it is necessary, and *70 there is no getting- on without it, in any case; for although the instrument may give the most minute description, it cannot identify. That can only be done by proof dehors: e. g., a legacy is given to A. B.; one sues for the legacy, alleging that he is the identical A. B.: this must be decided by proof dehors, viz., either the admission of the executor, or the testimony of witnesses. So a devise of a piece of land, beginning at a “ Med Oak ” and thence, &c., how can the identity of the Red Oak, the beginning comer, be fixed, except by evidence dehors ? Again, when there be two persons answering the description, the question of identity becomes more complicated, but it is still a question of identity, and must be decided by evidence dehors the instrument: As if two persons allege themselves to be the identical A. B. meant by the testator, or, as is said in the books, as if there be two u Cousin Johns.” Again, if one has been commonly and popularly called by two names, the one his true name, or as Coke calls it, his name of Baptism, the other a nick-name, and a legacy is given to him by his nick-name — upon the question of identity, evidence dehors —either admissions or other testimony — is not only competent but necessary to show that he is the individual to whom the legacy is given: As, that he was commonly known by such nick-name, ab well as by his true name, and was so usually called by the testator. For instance, a legacy given to u Petit Corporal ” by a veteran of the army of Italy, could have been recovered by Napoleon Buonaparte; and a legacy given some twenty years ago to “ Old Hickory,” could have been recovered by Andrew Jackson. This sub-division includes the case under consideration; for it is a mere question of identity, which may be shown by admissions or proof that the full name of the plaintiffs was usually not given in common parlance, and that for the sake of brevity, they were generally called and well and popularly known as the u Deaf and Dumb Institution.” Again, if a person or thing be named, and if after resorting to proof dehors, no such person or thing can be found, the legacy must fail for tire want of a person or thing to fit the description, and not because there is any difficulty upon the question of construction. Barnes v. Simms, 5 Ire. Eq. 392. There was a legacy of two negroes by the names of Aaron and Pike. The testator had no slaves known by these names, but he *71 had two known by the names of Lennon and Pite-, but although he had disposed of all of his other slaves and these two remained undisposed of, unless they passed under the names of Aaron and Pike, it was held that could not be allowed in the absence of any proof dehors, that Lcmion was sometimes called Aaron, so as to be known by both names; and so, likewise, as to Pite, (or Piety,) there being no proof that she was ever called Pike. The question is treated throughout as one of identity, and not one of construction; for upon the face of that will, as in the will before us, there was no difficulty. The difficulty arose on the question of identity, and the case was decided on the ground that the subject of the legacy could not be identified, even1 with the aid of all the evidence outside of the icill that could be procured.
It is said, admit such to be the law in regard to individuals or natural persons, it is not so in regard to corporations or artificial persons ; for every corporation has a name given to it in the charter by which to sue or be sued, grant or take ; therefore, it cannot take, unless the legacy be given to it under the name set out in the charter. The readiest reply is, such is the case in regard to any individual. He has a name given to him at his baptism, by which to “ sue and be sued, grant or take ;” but tire question is fixed by the authorities, 10 Rep. 28, id. 123; Stafford v. Bolton, 1 Bos. & P. 41, where C. J. Ey:re says — “the case in Brook, (“ Misnomer ”) 73, puts a corporation in the same situation with a natural person as to pleas in abatement for misnomer. It has never since been questioned, that in regard to the name, for the purpose of identification, a natural person and a corporation stand precisely on the same footing — with this exception in favor of corporations —a Christian name consists in general but of a single word, as John, Robert, whereas the name of a corporation frequently consists of several words ; and “ the transposition, interpolation, omission, or alteration of some of them may make no essential difference of the sense. ’ ’ Angelí &• Ames on Corporations 77.
We now come to Taylor v. The American Bible Society. From what has been said, it is clear that case was put on the wrong side of the line dividing patent and latent ambiguities, in questions of construction and questions of identity. A latent am *72 biguity or question of identity was presented in that case, in regard to which evidence dehors was not only competent but necessary ; and yet such evidence was excluded by putting the case on the wrong side of the line, and classing it under the head of patent ambiguity, or questions of construction.
The two principles which we have before announced, are distinctly stated and admitted in that case — so there is no difficulty about the law. But we hold there was error in the application; in other words, the case was put on the wrong side of the line. Bridges v. Pleasants and Barnes v. Simms, are both cited and relied on; but we have seen, that the one presented a case of patent ambiguity, or a matter of construction, the other, a case of latent ambiguity, or a matter of identity. Á negro is bequeathed by the name of “ Aaron.” There is no ambiguity in that; no room for construction. But when the negro is called for, none such is to be found : so the difficulty arises outside of the will, and the question is one of identity. It is thereupon suggested, that a negro named “ Lamon ” was intended ; but it was decided “ Lamon ” cannot pass, under the name of “ Aaron,” unless there be proof that he was sometimes called by the latter name, so as to be known by both names- — which was not pretended.
A legacy is given to “ the Bible Society ” — there is no ambiguity in that, no room for construction ; but when the legatee is called for, none such is to be found, for there is no corporation having that name. So the difficulty arises outside of the will, and the question is one of identity. It is thereupon suggested that a corporation named “the American Bible Society”'was intended ; and it was admitted that “ the American Bible Society ” was commonly called and popularly known by the name of “the Bible Society,” so as to be known by both names. The rule of law in reference to the two principles above announced, was admitted, and yet thtere was a misapplication ; for the case is classed and decided as one of construction. And it is stated in the opinion — “ This case does not present the question of a latent ambiguity — that only arises when several persons or things come completely within the description contained in the will.” It is obvious, therefore, that the misapplication is to be attributed to the fact that a single instance was taken for the principle. It *73 is clear that the principle or rule governing cases of latent ambiguity or questions of identity must apply, as well when a person or thing is known by two names, as when two persons or things are known by the same name. In fact, as we have seen above, the principle must of necessity apply to all cases where it becomes necessary to show that the person who claims, or tire thing claimed, is the identical person or thing ; or in the language of C. J. RuffiN in Barnes v. Simms, “ where the description is to be fitted to the person or thing.”
We consider it a matter of duty to correct an error as soon as it is discovered. It is certainly the most candid course, and we hope in that way to avoid much confusion and subtle refinement. There is no doubt that the complexity of the law upon several subjects, to be met with in the books, grew out of the fact that the Courts, to avoid overruling previous decisions, had recourse to nice distinctions, too fine for every day use.
The case under consideration is a legacy to u the Deaf and Dumb Institution.” There is no ambiguity in that; no room for construction. In looking for the legatee, it turns out there is no such corporation. But it is suggested that a corporation named “ The President and Directors of the North Carolina Institute, for the education of die Deaf and Dumb,” was the legatee intended ; and it is admitted by the executor, that this corporation was commonly called and popularly known by the name of “ The Deaf and Dumb Institution” — in other words, it is known by both names. The case, then, is one of latent ambiguity, or of identity; in regal'd to which the principle or rule of law is entirely settled.
It is said, if a corporation sues by a wrong name, the error is fatal under the general issue ; and we are asked, how can a corporation ta/ce by a wrong name, or any other name than that given to it in its charter ? As to the matter of pleading, reference was made to 1 Chitty, 281 and notes, Brittain et al v. Newland, 2 Dev. & Bat. 363, where it is decided that corporations must sue in their corporate names ; and the plaintiff Brittain and others, suing as cc The President and Directors of the Buncombe Turnpike Company,” were nonsuited, because the true name of the corporation was <c The Buncombe Turnpike Company.” We *74 reply, if an individual sues by a wrong name, he will be non-suited ; for every body, natural as well as corporate, ought to know their own names. So there is no distinction between individuals and corporations in this respect. But there is a marked distinction between a question of pleading, when the plaintiff sues by a wrong name, and cases where gifts, deeds or bonds are executed to individuals or corporations by a wrong name. This distinction was settled in the case of The Mayor &c. of Linn re-gís, 10 Rep. 123, and has never since been called in question. The reason of the distinction is a sound practical one. “ If the “ name of a corporation be mistaken in a writ, a new writ may “ be purchased of common right; but if it were fatal in leases “ and obligations, the benefit of them would be wholly lost, and “ therefore, one ought to be supported and not the other.” This distinction is recognized in Mayor of Stafford v. Bolton, 1 Bos. & P. 41. There, the difference between the name used and the true name of the corporation was held to be so slight as to be a mere matter of form, which ought to have been pleaded in abatement; whereas in Brittain v. Newland, there was a difference in substance.
In all of the cases, it is taken for granted as settled law, that if an individual or corporation, in a will, deed or bond, is described by a nick-name, that is a short name, one nicked or cut off for the sake of brevity, without conveying any idea of opprobium, and frequently evincing the strongest affection or the most perfect familiarity — e. g., “ the Little Corporal ” — “ Old Hickory ”— “ Rough and Ready ” — when the question of identity arises, it is competent to show that the individual or corporation whose true name was not used, was nevertheless meant to be indicated by the nick-name or soubriquet. In 10 Rep. 125, Coke says, “ God forbid that every curious or nice misnomer, in gifts, leases or grants,” by or to corporations, should be defeated; for there “ be a sound difference betwixt writs and grants.” In this age of progress, it would be a more especial ground for lamentation. Every thing in these days is made short — names, distances, &c., &c.; and if a corporation cannot entitle itself to a legacy, by showing that it was usually called and known by a short name, “Deaf arid Dumb Institution,” instead of the “President and Directors *75 of the North Carolina Institute for the Education of the Deaf and Dumb,” many charitable gifts will be defeated. By way of showing further the tendency of the present day to shorten names, and that the rules of law must fit the existing state of things, I will mention an instance which falls under my notice every day. A branch of one of the principal Banks in our State has a nick or short name on its door — “ Bank of Cape Fearwhereas by law the name of the corporation is u The President, Directors and Company of the Bank of Cape Fear.” But will any one say, that that institution is not as well known by the one name as by the other? (in fact more usually known by the short name) — and could it be insisted, that anote payable to the cashier of the branch of the Bank of Cape Fear at Raleigh, could not be sued on, for the reason that there is no such corporation as “ the Bank of Cape Fear? ”
There is no such corporation as 11 the Deaf and Dumb Institution ;” but there is a corporation as well and perhaps better known by that than by its true name. The purpose of this corporation is to carry out the very charity to which the testator of the defendant has dedicated a portion of his estate. The rules of law as well as of good sense forbid that the charitable intention of the testator should be defeated because he did not know the precise name of the corporation, and had fallen into the common practice of calling it by a short name.
The plaintiffs are entitled to the legacy. There must be a reference to state the amount of assets.
Per Curiam. Decree accordingly.