J. G. ROBBINS AND WIFE, FAITH P. ROBBINS v. C. W. MYERS
TRADING POST, INC.

(Filed 14 December, 1960.)

**1. Appeal and Error § 60—**

A decision of the Supreme Court must be interpreted in the light
of the facts of the case in which the language is used, and where, on
a former appeal, the meaning of a particular term of the contract was
not involved and no evidence adduced in the prior trial in regard
thereto, the former opinion cannot be held to have adjudicated this
question.

**2. Contracts § 12—**

A contract is to be construed as a whole and each clause and word
must be considered with reference to the other provisions of the agree-
ment and be given effect if possible by any reasonable construction.

**3. Same—**

Where the language of a contract is free from ambiguity and its
meaning clear, its construction is a matter of law for the court, and
parol evidence will not be heard to contradict, add to, or vary its terms.
since it will be presumed that the parties inserted all provisions by
which they intended to be bound.

**4. Same: Contracts § 26—**

Where a construction contract provides that the contractor should
"complete in a satisfactory manner and as a first class turn-key job
the entire construction of said dwelling * * * To use the same kind of
material used" in a specified house, the phrase "first class turn-key job"
refers to labor and the completion of the dwelling for occupancy and
cannot be construed to refer to the quality of materials, since the ma-
terials to be used are expressly stipulated and controlled by the pro-
vision that they should be the same kind used in the other dwelling
referred to.

**5. Same—**

Where a construction contract stipulates the materials to be used in
plain and unambiguous language, the kind and quality of the materials
is controlled by the written agreement, and testimony of witnesses as
to the meaning of its provisions as to the kind and quality of the
materials to be used, and testimony of plaintiff as to subsequent declar-
ations of defendant as to the meaning of this specification, is incom-
petent as tending to vary the written instrument.

**6. Same—**

Where a construction contract stipulates that the materials to be used
should be the same kind as those used by the contractor in another
dwelling, and it appears that the contractor had constructed two other
dwellings fitting the description, parol evidence is competent to identify
the dwelling referred to.

RODMAN, J., concurring in result.

DENNY and BOBBITT, JJ., join in concurring opinion.

APPEAL by defendant from *Phillips, J.,* 21 March 1960 Term, of FORSYTH.

Civil action to recover damages for alleged breach of a written contract to build a dwelling house for plaintiffs.

The jury found that defendant had breached the contract, and awarded damages in the sum of $4,600.00.

From judgment in accord with the verdict, defendant appeals.

*Leake & Phillips and Wood & Stone for plaintiffs, appellees.*
*Eugene H. Phillips for defendant, appellant.*

PARKER, J. This case was here on a former appeal by defendant, and a new trial was awarded, because of the admission of incompetent evidence. *Robbins v. Trading Post,* 251 N.C. 663, 111 S.E. 2d 884.

The pleadings of the parties, consisting of a complaint and answer, in both trials are identical. The complaint alleges that defendant contracted to construct for plaintiffs on their land "a dwelling house according to certain plans and specifications and 'complete in a satisfactory manner and as a first class turn-key job, the entire construction of said dwelling' " for $10,000.00, the completion of the house, the delivery of possession of it to plaintiffs, the payment by plaintiffs of the contract price, and breach of the contract by defendant in that the house was not a first class turn-key job and satisfactory for the reason that inferior materials and workmanship were used in its construction. Defendant in its answer admits the execution of the contract, the payment of the purchase price, denies that the materials used and the workmanship were inferior, and avers that the contract was performed in accord with the terms thereof.

The contract was in writing. It was introduced in evidence by plaintiffs, and read to the jury. Its relevant parts are: "Builder agrees to commence and complete in a satisfactory manner and as a first class turn-key job the entire construction of said dwelling . . . ; IT BEING UNDERSTOOD AND AGREED that said dwelling shall be exactly like house built on Endsley Ave. house #13, except house is to have one-half brick front with the rest of the house planked up and down, house to have screens installed, full basement with no garage, oil heat to each room, tile bath to have the choice of the color of the tile in bath and kitchen, knotty pine paneling inside, fireplace in the basement and upstairs, planked up and down just like Endsley Ave. house #13 on the corner, house to have a straight

roof. . . . To be the same size house but the kitchen is to be 2 foot bigger and the bedroom smaller. To use the same kind of material used in Endsley Ave. house #13. . . . It is agreed that any substantial variation from this contract to be binding shall be in writing and signed by the parties hereto."

A. E. Gentry, a contractor and builder, who has built about eight houses a year for six or eight years, was a witness for plaintiffs. He testified on direct-examination that in his trade and business he knew what a first class turn-key job was. He was then asked what he would consider a first class turn-key job to be. Defendant assigns as error the admission of his answer over its objection as follows: "Well, it would be in a first class manner; in other words, your joints would be fitted good where you join pieces together, and you would be using a good material, that wouldn't be chipped out or knotty, full of knots, or holes, knotholes, rather." Defendant further assigns as error that Gentry on direct-examination was permitted to testify that it would cost $4,600.00, in his opinion, to repair the Robbins' house and put it in the condition that the contract calls for. Gentry testified on cross-examination: "I testified in giving my interpretation of the contract, that first class workmanlike manner and turn-key job contemplated both the best materials and the best workmanship. Your workmanship can still be first class if you don't have good materials altogether. But the end result, if inferior materials are used, still would not measure up to what you would think of a first class job. All of the materials in the house on Endsley Avenue are not of first grade quality."

Plaintiffs do not assail the building contract on the ground of fraud or mistake. This action is on the building contract as written. In order to determine the rights of the parties, it is essential that we consider the written building contract.

The Court in its opinion on the former appeal said: "The contract provides that the building 'shall be exactly like house built on Endsley Ave. house # 13' (with minor exceptions) and shall be constructed of 'the same kind of material used in Endsley Ave. house #13.' These are the plans and specifications."

In the first appeal there was no evidence in the record as to the meaning in the building trade of "a first class turn-key job the entire construction of said dwelling," as there is in the evidence in the second appeal. This Court said in *Light Co. v. Moss*, 220 N.C. 200, 17 S.E. 2d 10, quoting from Walter, Brief-Writing and Advocacy, p. 78: " 'Courts repeatedly have held that the language of their opinions must be read in connection with the facts of the case in which the

language was used.' " Bearing this well settled principle of law in mind it is plain that the Court on the former appeal did not consider and decide the legal effect and meaning of the words "a first class turn-key job the entire construction of said dwelling" as used in the written contract and as used in connection with all the other words in such contract.

"A contract must be construed as a whole, and the intention of the parties is to be collected from the entire instrument and not from detached portions, it being necessary to consider all of its parts in order to determine the meaning of any particular part as well as of the whole. Individual clauses in an agreement and particular words must be considered in connection with the rest of the agreement, and all parts of the writing, and every word in it, will, if possible, be given effect. The foregoing rules are applicable in the interpretation of building and construction contracts." 17 C.J.S., Contracts, § 297.

The building contract provides, "it is understood and agreed that said dwelling shall be exactly like house built on Endsley Ave. house #13," with a number of changes specified in the contract. Defendant assigns as error the admission in evidence over its objection of testimony of male plaintiff on direct-examination to the effect that when these changes were being discussed C. W. Myers, president of defendant, said he would put in first class material all through plaintiffs' house. The male plaintiff then testified: "He said the materials in the Endsley Avenue house were scraps and they was rent houses and he built them for rent houses, and they were scraps from other houses that he had built. We asked him about that at the time we signed the contract." Then he was asked: "And what did he say about that?" He answered: "He said, 'it is wrote in the contract to be first class material.' " Defendant assigns as error the denial of his motion to strike the answer. Plaintiffs contend the challenged testimony was competent to explain a latent ambiguity in the contract as to the kind of material to be used in the construction of their dwelling, that the words "first class turn-key job" were meant to identify the kind of material to be used, and that Myers' statement was an admission by defendant that the words "first class turn-key job" meant in the construction business good material and good workmanship. C. W. Myers testified on cross-examination: "My man drew that contract. I did not put in there about first class turn-key construction to deceive these people; it was put in there to be as good as that or better, and it is better; it must be a pretty good house if it is worth $12,000.00 today. I think it is a first class

turn-key job for the price of the house. I contracted to build them a house for a first class turn-key job, with the same kind of material that is in the other house. That is the contract."

Plaintiffs state in their brief: "Plaintiffs in neither trial denied that the contract required the 'same kind of material' as in the Endsley Avenue house. Plaintiffs do not at this time ask for a construction of the contract which disregards this term of the contract. Plaintiffs do ask, however, that the contract be construed as a whole, including the term 'first class turn-key job,' in the light of the evidence introduced to establish the intended meaning of that term. Plaintiffs contend the intent of the parties was strictly a matter for the jury."

The written contract states the defendant agrees to complete "as a first class turn-key job the entire *construction* of said dwelling." (Emphasis ours.) Nothing is said in these quoted words about material to be used in the construction of the dwelling. Webster, New International Dictionary, 2nd Edition, defines turn-key job thus: "Any job or contract in which the contractor agrees to complete the work to a certain specified point, and to assume all risk." The contract then specifically states: "IT BEING UNDERSTOOD AND AGREED that said dwelling shall be exactly like house built on Endsley Ave. house #13 (with minor exceptions). To use the same kind of material used in Endsley Ave. house #13."

It seems plain that the words "as a first class turn-key job the entire construction of said dwelling," as used in the contract, considered not as a detached portion but in connection with the other words in the contract, must have been used in their ordinary sense, and meant that defendant would build a complete house, that is one ready for occupancy by plaintiffs as a dwelling, and did not mean the kind of material to be used in its construction, because the material to be used in the construction was stated exactly in the contract, "to use the same kind of material used in Endsley Ave. house #13." We find no ambiguity or uncertainty in the language of the building contract before us as to the kind of material to be used in the construction of plaintiffs' dwelling. Such being the case, "the rule is that where the language of a contract is free from ambiguity, the ascertainment of its meaning and effect is for the court, and not for the jury." *Young v. Mica Co.*, 237 N.C. 644, 75 S.E. 2d 795. This rule is applicable as to building and construction contracts. 9 Am. Jur., Building and Construction Contracts, p. 8.

The terms of the building contract are clear and unambiguous as to the kind of material to be used in the construction of plaintiffs'

dwelling. Such being the case, it has long been the law in this State the court is bound to enforce the contract as it finds it. To accept plaintiffs' contention that C. W. Myers said "it is wrote in the contract to be first class material," and therefore this evidence is competent to show the intended meaning of the parties as to the kind of material to be used, would be to make a new contract for the parties. "Where the contract is, in fact, understood by one of the parties in a certain sense and the other party knows that he so understands it, then the undertaking is to be taken in that sense, provided this can be done without making a new contract for the parties." *Weger v. Robinson Nash Motor Co.*, 340 Ill. 81, 172 N.E. 7. This has been quoted in *Keefer Coal Co. v. United Electric Coal Cos.*, 291 Ill. App. 477, 10 N.E. 2d 210; *Hurd v. Illinois Bell-Telephone Co.*, 136 F. Supp. 125. This evidence is incompetent, and should have been stricken.

The building contract provides that in constructing the dwelling for plaintiffs "the same kind of material used in Endsley Ave. house #13" shall be used. This contract also speaks of "Endsley Ave house #13 on the corner." The evidence shows that defendant had constructed a dwelling on the southwest corner of Endsley Avenue and Euclid Avenue, and also a dwelling on the northwest corner of Endsley Avenue and Euclid Avenue. Both houses were constructed of inferior or substandard material, but the house on the southwest corner was built of better material than the house on the northwest corner. Plaintiffs' evidence tends to show that "Endsley Ave. house #13" in the contract refers to the house on the southwest corner of Endsley Avenue and Euclid Avenue, and plaintiffs so contend: defendant's evidence tends to show that "Endsley Ave. house #13" refers to the house on the northwest corner, and defendant so contends. The question as to the identity of the house #13 Endsley Avenue on the corner was not raised in the trial on the former appeal, and the opinion on that appeal did not consider or decide it.

This Court said in *Ray v. Blackwell*, 94 N.C. 10: "It is a rule too firmly established in the law of evidence to need a reference to authority in its support, that parol evidence will not be heard to contradict, add to, take from or in any way vary the terms of a contract put in writing, and all contemporary declarations and understandings are incompetent for such purpose, for the reason that the parties, when they reduce their contract to writing, are presumed to have inserted in it all the provisions by which they intend to be bound, 1 Greenleaf Ev., Sec. 76. *Etheridge v. Palin*, 72 N.C. 213." What we have quoted from this case was quoted in *Oliver v. Hecht*,

207 N.C. 481, 177 S.E. 399, where, after the quotation, the Court said: "We have frequently quoted the *Ray* case, *supra*, as it is a clear and concise expression of the law on the subject." We have consistently held that the above quotation from the *Ray* case is the law in this State. *Bost v. Bost*, 234 N.C. 554, 67 S.E. 2d 745.

The testimony of A. E. Gentry to the effect that in the building trade a first class turn-key job meant the use of good material and that to repair plaintiffs' house with good material would cost $4,-600.00 would be to contradict and nullify the clear and unambiguous provision of the building contract in the instant case "to use the same kind of material used in Endsley Ave. house #13," and the admission of this incompetent evidence was prejudicial to defendant and error.

There is a latent ambiguity in the words "Endsley Ave. house #13." It is a question of identity — a fitting of the description to the house —, which can only be done by evidence outside or *dehors* the written contract. *Institute v. Norwood*, 45 N.C. 65; *Self Help Corp. v. Brinkley*, 215 N.C. 615, 2 S.E. 2d 889; *Trust Co. v. Wolfe*, 243 N.C. 469, 91 S.E. 2d 246. This is a question of identity, and is an issue of fact for a jury to determine under appropriate instructions by the court. When the jury has determined this issue, then there is for their determination the issue as to whether or not the same kind of material was used in the construction of plaintiffs' dwelling as was used in the construction of the dwelling identified as "Endsley Ave. house #13."

The court also committed prejudicial error in permitting Kenneth E. Foster, a witness for plaintiff, to testify over defendant's objection that the words "a first class turn-key job" in the building trade mean first class material shall be used in construction of a building, and further that to repair plaintiffs' house and make it "a first class turn-key job" would cost, in his opinion, $4,879.00.

The court erred in permitting the male plaintiff to testify that when the changes to be made in the construction of plaintiffs' house were being discussed, C. W. Myers said he would put in first class material all through plaintiffs' house, as above set forth, for the reason that the contract having been reduced to writing, the parties are presumed to have inserted in the contract all the provisions by which they intend to be bound. *Ray v. Blackwell, supra.*

Defendant is entitled to a new trial, and it is so ordered.

New trial.

RODMAN, J., concurring in result. Plaintiffs are entitled to such

damages as the law may allow for the breach of a contract correctly interpreted. To interpret it is necessary to ascertain the intent of the parties when the contract was made. That intent binds them. When they have chosen words which are plain and unambiguous to express that intent, neither may offer evidence to show a different understanding.

The opinion of the majority applies this rule to the contract therein quoted. I think the rule is not applicable to the facts of this case. The contract obligates defendant to construct "in a satisfactory manner and as a first class turn-key job." It also provides that "the same kind of material used in Endsley Ave. house" shall be used.

Plaintiffs were permitted to show what, in the building trade, the phrase "first class turn-key job" means, when, as here, the builder is obligated to furnish both labor and material. I think the evidence competent. The contract does not say that workmanship shall be first class but materials may be shoddy. To reach that result, it is necessary to conclude that the word "kind" in the phrase "kind of material used" necessarily means both quality and character of material. Unexplained, that meaning might be given to it, but it is also susceptible, I think, to a meaning of character without regard to quality. The *kind of material to be used* is pine, ash, poplar, gum, or mahogany wood or brick or concrete as used in the Endsley Avenue house. In ordinary parlance one might inquire, "What kind of material was used in making the garment?" and receive a reply, "Wool, cotton, or silk."

In ascertaining the meaning of the word "kind," it is well to remember the language of *Justice Holmes*: "A word is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne v. Eisner*, 245 U.S. 418, 62 L. ed. 372.

The contract was written by an official of defendant. If we are permitted to hear the author's own interpretation of the phrase "first class turn-key job," made when he was writing the contract, we find that it covers both materials and workmanship.

I think the rule here applicable is as stated by *Brown, J.*, in *Neal v. Ferry Co.*, 166 N.C. 563, 82 S.E. 878. He said: "It is well settled that where words or expressions are used in a written contract, which have in particular trades or vocations a known technical meaning, parol evidence is competent to inform the court and jury as to the exact meaning of such expression in that particular trade or voca-

tion, and it is for the jury to hear the evidence and give effect to such expressions as they may find their meaning to be."

Plaintiffs are, I think, entitled to have the jury consider the evidence declared incompetent.

When the intent of the parties has been properly ascertained from the words used, plaintiffs are entitled to such damages for the breach as are allowed by law.

On the previous appeal, 251 N.C. 663, 111 S.E. 2d 884, it was said: "Plaintiffs' evidence tends to show that in order to remedy deficiencies a substantial part of what has been done must be undone. If the jury accepts plaintiffs' theory of the case, the measure of damages is the 'difference in value' rule stated above." That is the law of this case. Notwithstanding the rule so announced, the court, over defendant's objection, permitted plaintiffs to offer evidence and the jury to base its verdict on the cost of remodeling rather than the difference in value between the house as contracted for and the house as constructed. As a result plaintiffs have judgment for more than they are entitled to. This error entitles defendant to a new trial.

DENNY and BOBBITT, JJ., join in concurring opinion.