DUKE ENERGY CORPORATION, A North Carolina Corporation, Tax Identifica-
tion No. 56-0205520, Plaintiff v. WENDELL COREY MALCOLM and
CALLABRIDGE/GRANITE, LLC, Defendants

No. COA05-755

(Filed 20 June 2006)

**1. Easements— consent judgment—landowners' placement of trees and structures—dominant tenant's removal right**

Easement rights contained in a consent judgment entered
by plaintiff electric power company and defendant landowners'
predecessors in interest gave the power company the right to
have trees and structures placed by the landowners in the right-
of-way removed where the consent judgment granted the power
company the right to clear the right-of-way and to keep it clear of
any and all structures and trees, notwithstanding the consent
judgment also stated that the predecessors in interest reserved
all other rights not inconsistent with the easement rights granted
to the power company, since the reserved rights are restricted
by the enumerated rights granted to the dominant tenant in the
consent judgment.

**2. Appeal and Error— preservation of issues—failure to cite authority**

Although defendants contend the trial court erred by granting
injunctive relief that was inconsistent with the consent judgment,
this assignment of error is dismissed because defendant's argu-
ment is not supported by relevant authority as required by N.C. R.
App. P. 28(b)(6).

**3. Injunctions— permission required before placing objects within right-of-way**

The trial court erred by enjoining defendants from placing
other structures, trees, fire hazards and other objects of any
nature within the right-of-way without plaintiff's permission inso-
far as the judgment requires defendants to obtain plaintiff's per-
mission before placing objects within the right-of-way.

**4. Appeal and Error— preservation of issues—costs—prema-
ture argument**

Although defendants contend the trial court erred by award-
ing plaintiff costs in this action, this argument is premature

DUKE ENERGY CORP. v. MALCOLM

[178 N.C. App. 62 (2006)]

because the trial court has not yet entered a specific order providing the nature or amount of costs awarded to plaintiff.

**5. Appeal and Error— preservation of issues—no merit**

Defendants' remaining assignments of error have not been preserved for appeal or are without merit.

Judge ELMORE dissenting.

Appeal by defendants from judgment entered 14 December 2004 by Judge James E. Lanning in Mecklenburg County Superior Court. Heard in the Court of Appeals 11 January 2006.

*Parker, Poe, Adams & Bernstein, LLP, by Irvin W. Hankins, III and John W. Francisco, for plaintiff-appellee.*

*Kilpatrick Stockton, LLP, by Noelle E. Wooten, for defendant-appellant Callabridge.*

*James E. Scarbrough, for defendant-appellant Malcolm.*

LEVINSON, Judge.

Wendell Corey Malcolm and Callabridge/Granite, LLC (defendants) appeal from the trial court's entry of summary judgment in favor of plaintiff Duke Energy Corporation. We affirm in part and reverse in part.

The pertinent facts may be summarized as follows: Defendants own a 48 acre tract of land located at the intersection of State Highway 16 and Mount Holly-Huntersville Road in Mecklenburg County (the property). Plaintiff purchased a 199 foot-wide easement across the property from the defendants' predecessor in interest in 1977. The agreement containing the easement was subsequently set forth in a consent judgment on 25 August 1977. The consent judgment grants plaintiff, *inter alia*, "[t]he right for [Duke Energy] at any time to clear said strip and to keep said strip clear of any and all structures, trees, fire hazards and other objects of any nature." However, the consent judgment reserves to the defendants all other rights "not inconsistent with the rights therein contained to Duke Energy."

Callabridge purchased the property on 25 August 2000 subject to the plaintiff's easement. On 31 May 2002, Callabridge sold a portion of the land to defendant Wendell Corey Malcolm. Sometime before 24 July 2002, Callabridge developed the land into a shopping center com-

plex and constructed a concrete and stone "Callabridge Landing" sign as well as a pole and single wire fence on the easement. Callabridge also planted several Crepe Myrtle trees within the dimensions of the easement.

Plaintiff objected to the placement of the trees and other structures on its easement and, as a result, filed the subject action. Plaintiff contends that the consent judgment containing its easement rights required that the land be clear of the encroachments that Callabridge placed within the dimensions of the easement. Therefore, plaintiff maintains, defendants must remove the encroachments and refrain from further placement of impermissible structures within the boundaries of its easement. Callabridge contends that the transfer to plaintiff constituted an easement, not a transfer in fee simple, and that as long as the trees and structures do not interfere with Duke's ability to transmit electricity, it is permitted to utilize its land in a manner consistent with its reserved rights under the terms of the 1977 consent judgment.

The trial court entered summary judgment in favor of plaintiff on 14 December 2004, concluding that there was no genuine issue of material fact, reasoning that the language of the consent judgment granted plaintiff the unambiguous right to clear the right of way of any trees, structures, fire hazards and other objects of any nature. The trial court also concluded that the plaintiff's right to clear applied to the encroachments at issue in the instant case. Defendants appeal.

[1] On appeal, defendants contend that the trial court erred in granting summary judgment for the plaintiff because there exist genuine issues of material fact. Specifically, the defendants contend that there exists a material factual dispute of whether defendant's use of the land interfered with plaintiff's rights under the easement. We disagree.

Under N.C. Gen. Stat. §1A-1, Rule 56(c) (2005), summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." Thus, "the standard of review on appeal from summary judgment is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law. Further, the evidence presented by the parties must be viewed in the light

**DUKE ENERGY CORP. v. MALCOLM**

[178 N.C. App. 62 (2006)]

most favorable to the non-movant." *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998) (citation omitted).

Consent judgments delineating easement rights are foremost contracts. *See Hemric v. Groce*, 154 N.C. App. 393, 397, 572 S.E.2d 254, 257 (2002) ("A consent judgment is a contract between the parties entered upon the record with the sanction of the trial court and is enforceable by means of an action for breach of contract[.]"). In interpreting a contract, our courts adhere to the following central principles:

"[T]he goal of construction is to arrive at the intent of the parties when the [contract] was [written]. Where a [contract] defines a term, that definition is to be used. If no definition is given, non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended. The various terms of the [contract] are to be harmoniously construed, and if possible, every word and every provision is to be given effect. . . . [I]f the meaning of the [contract] is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein."

*Gaston County Dyeing Machine Co. v. Northfield Ins. Co.*, 351 N.C. 293, 299-300, 524 S.E.2d 558, 563 (2000) (quoting *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 505-06, 246 S.E.2d 773, 777 (1978)).

The trial court's determination of whether the language in a consent judgment is ambiguous is a question of law and therefore our review of that determination is *de novo. Bicket v. McLean Securities, Inc.*, 124 N.C. App. 548, 553, 478 S.E.2d 518, 521 (1996). "An ambiguity exists where the language of a contract is fairly and reasonably susceptible to either of the constructions asserted by the parties." *Glover v. First Union National Bank*, 109 N.C. App. 451, 456, 428 S.E.2d 206, 209 (1993).

This Court in *Hanner v. Power Co.*, 34 N.C. App. 737, 737, 239 S.E.2d 594, 595 (1977), held that the enumerated right granted to the defendant "to keep said strip of land free and clear of any or all struc-

tures, trees and other objects of any nature . . ." was unambiguous. In *Hanner*, plaintiffs owned a track of land that was servient to an easement held by the defendant. *Id.* In addition, the plaintiff had the reserved right to grow "such crops and maintain[] such fences as may not interfere with the use of said right of way by the Power Company[.]" *Id.* at 738, 239 S.E.2d at 595. After defendant removed trees that plaintiff had planted within its easement, the plaintiff filed suit against defendant for the alleged unauthorized cutting of the trees. *Id.* The trial court granted, and this Court later affirmed, summary judgment in favor of defendants. *Id.* at 738-39, 239 S.E.2d at 595. The *Hanner* Court held that, as a matter of law, such contractual language was unambiguous. *Id.* In so holding, the *Hanner* Court reasoned that plaintiff's right to grow crops was specifically limited by the contractual provision that gave the defendant the express right to clear trees and other objects from its right of way. *Id.*

We next turn to an application of the foregoing principles to the instant case. The 1977 consent judgment between plantiff and Dunn Development Corporation, predecessors in interest to defendants, awarded the following enumerated rights to the plaintiff:

> The right to enter said strip of land . . . and the right, within the limits of said strip of land to erect, construct, reconstruct, replace, maintain and use towers, poles, wires, lines, cables, and all necessary and proper foundations, footings, crossarms and other appliances and fixtures for the purpose of transmitting electric power and for [Duke's] communication purposes, together with a right of way on, along, and in all of the said strip of land; together with the right for [Duke] at any time to make relocations, changes, renewals, substitutions, and additions on or to said structures within said strip; the right for [Duke] at any time to clear said strip and keep said strip clear of any and all structures, trees, fire hazards and other objects of any nature[.] (emphasis added).

Duke also acquired the right to trim and cut trees outside of the easement that might endanger its equipment, as well as the right of ingress and egress. However, the easement reserved to defendants:

> all other rights to said strip of land not inconsistent with the rights and easements herein contained, but [Callabridge] cannot: (1) construct streets, roads, water lines . . . across said strip at an angle of less than forty-five (45) degrees . . . nor closer than 20 feet to any structures placed upon the right of way by [Duke] . . .

**DUKE ENERGY CORP. v. MALCOLM**

[178 N.C. App. 62 (2006)]

(2) maintain fences that are not safely removed from [Duke's] structures . . . (3) dig wells on said strip; (4) place . . . underground storage tanks on said strip; (5) use said strip for burial grounds; (6) interfere with or endanger the construction, operation, or maintenance of [Duke's] facilities. (emphasis added).

Here, we are guided by the principles articulated in *Hanner*. The defendant's reserved power to retain all other rights "not inconsistent with the rights therein granted" is limited by plaintiff's "right . . . at any time to clear said strip and to keep said strip clear of any and all structures, trees, fire hazards and other objects of any nature." Whether the general reserved rights under the consent judgment are narrowly defined as in *Hanner*, or are more broadly etched as in the instant case, the reserved rights are restricted by the enumerated rights granted to the dominant tenant in accordance with the easement.

Defendants nevertheless argue that they are free to make use of their land so long as the use does not interfere with plaintiff's transmission of electricity pursuant to the reasoning set forth in *Power Co. v. Rogers*, 271 N.C. 318, 156 S.E.2d 244 (1967), and *Light Co. v. Bowman*, 229 N.C. 682, 51 S.E.2d 191 (1949). We disagree.

The gravamen of the line of cases cited by the defendants, which involved condemnation actions, is that:

the general rule in regard to land condemned for use for electric power transmission lines seems to be that the landowner has the right to make use of the strip of land condemned in any manner which does not conflict with the rights of the Power Company, and which is not inconsistent with the use of the land for the purposes for which condemnation was allowed, and which does not interfere with the free exercise of the easement acquired. (emphasis added).

*Light Co.*, 229 N.C. at 687, 51 S.E.2d at 195.

In other words, the servient tenant may make any use of the land so long as the use (1) does not conflict with the power company's rights, and (2) is consistent with the purpose for which the easement was granted, and (3) does not interfere with the dominant tenant's free exercise of the easement. These requirements are conjunctive, and the landowner must meet all three conditions in order to use the land subject to an easement in the manner it chooses.

In the instant case, the defendants' use of the land, *i.e.* the planting of trees and placement of other structures within the dimensions of the easement, is necessarily inconsistent with the enumerated right of the power company to keep the land clear of such trees and structures. It would be nonsensical to apply the consent judgment in a way that would permit defendants to plant trees and place other structures on the plaintiff's right of way, and simultaneously read the same contractual language to allow plaintiff to clear these same objects.

Defendants also argue that because planting trees, constructing monument signs and erecting fences are not mentioned in the prohibitions in the consent judgment that apply to them, they are allowed to leave the trees and structures in place. *See Power Co.*, 271 N.C. at 320, 156 S.E.2d at 248 (subject to the prohibitions specifically enumerated in the petition, the land owner may make any use of the land which will not interfere with the power company's transmission of electricity). We disagree.

The listed prohibitions in the consent judgment cannot fairly be seen as an exhaustive list of impermissible actions for defendants to undertake. Rather, while the initial reserved rights provision, which reserves all other rights "[n]ot inconsistent with the rights and easements therein contained" describes the defendants' retained bundle of rights, it simultaneously serves as a limitation of their rights. Stated differently, the reserved rights provision specifically prohibits the defendants from taking any action which is incompatible with the express right of the plaintiff to "at any time to clear said strip and to keep said strip clear of any and all structures, trees, fire hazards and other objects of any nature."

The trial court properly concluded that the language of the consent judgment was unambiguous and that plaintiff was entitled to have the trees and structures that defendants placed on its easement removed because plaintiff was exercising its enumerated right pursuant to the consent judgment.

[2] Defendants next contend that the trial court erred in granting injunctive relief that is inconsistent with the consent judgment. In its 14 December 2004 judgment, the trial court ordered the following injunctive relief:

22. The Defendant Callabridge is hereby ordered to completely remove the Encroachments from the Right-of-Way across the

DUKE ENERGY CORP. v. MALCOLM

[178 N.C. App. 62 (2006)]

Property within thirty (30) days from the date of entry of this Judgment.

23. The Defendant Malcolm is hereby ordered to completely remove the Stone Monument Sign from the Right-of-Way across the Outparcel within thirty (30) days from the date of entry of this Judgment.

24. The Defendants, and their respective agents, members, officers, directors, shareholders and employees, are hereby enjoined from placing any other structures, trees, fire hazards or objects of any nature within the Right-of-Way without Duke Energy's permission and from otherwise violating the Consent Judgment, so long as Duke Energy continues to use the Right-of-Way for the purpose as set forth in the Consent Judgment.

[3] On appeal, defendants contend that the trial court erred in ordering the defendants to remove the encroachments from the right of way. However, because defendant's argument in this regard is not supported by relevant authorities, we do not address it. *See* N.C.R. App. P. 28(b)(6) (providing that assignments of error not set out in the appellant's brief, or in support of which no authority is cited will be taken as abandoned). In addition, defendants argue that the trial court erred by enjoining defendants from "placing other structures, trees, fire hazards and other objects of any nature within the Right-of-Way without plaintiff's permission[.]" We agree with defendants' contention insofar as the judgment requires defendants to obtain plaintiff's permission before placing objects within the right-of-way, and we reverse to this extent.

[4] The defendants next contend that the trial court erred in awarding the plaintiff costs in this action. However, this argument is premature because the trial court has not yet entered a specific order providing the nature or amount of costs awarded to plaintiff.

[5] We have evaluated defendants' remaining assignments of error and conclude that they have not been preserved for appeal or are without merit.

Affirmed in part, reversed in part.

Judge McCullough concurs.

Judge ELMORE dissents in a separate opinion.

ELMORE, Judge dissenting.

In the narrowest of terms, the disagreement between these parties is how to interpret the phrase: "Respondent shall have all other rights to said strip of land not inconsistent with the rights and easements herein contained[.]" Broadly speaking, this appeal highlights the tension between contract law and property law. While I agree that consent judgments are *foremost* contracts, I do not agree that interpreting one dealing with property rights arising from a utility easement means we should ignore general concepts of property law known to the parties at the time of contracting and instead narrowly favor one clause of the contract over another.

Duke Energy Corporation (Duke) holds title to a utility easement across land owned and developed by Wendell Corey Malcolm and Callabridge/Granite L.L.C. (Callabridge) located on Highway 16 at the intersection of State Highway 16 and Mount-Holly Huntersville Road in Charlotte. Callabridge developed the land into a shopping center complex and constructed a concrete and stone "Callabridge Landing" sign and "pole and single wire fence" on the easement. The sign is about four feet high by thirty feet long and is located approximately sixty feet away from the nearest piece of Duke equipment. The fence, Callabridge contends, is necessary for the property to comply with transportation regulations. Callabridge also planted several trees on the easement. Duke contends all these items violate its easement right to keep the land clear of any structures, trees, and objects.

The majority isolates this easement right and determines that it is unambiguous. Thus, when it arrives at the phrase which leaves the landowner with "all other rights to said strip of land not inconsistent with" Duke's rights, the majority concludes "the reserved rights are restricted by the enumerated rights granted to the dominant tenant in accordance with the easement." As such, the majority holds that "the defendant's use of the land, *i.e.* the planting of trees and placement of other structures within the dimensions of the easement, is necessarily inconsistent with the enumerated right of the power company to keep the land clear of such trees and structures." Further, the majority discounts the latter half of the easement agreement—the enumerated prohibitions on the landowner's exercise of rights—that I believe refines the understanding and intent among the parties. "[T]he reserved rights provision," the majority states, "specifically prohibits the defendants from taking any action which is incompatible with the express right of the plaintiff to '[a]t any time to clear said strip and to

keep said strip clear of any and all structures, trees, fire hazards and other objects of any nature.' "

This flawed analysis leads to only one misplaced conclusion: since Duke has the right to clear the strip and keep it clear at all times, there is no limitation or review of its right to effectively occupy, or otherwise exclude occupancy, of the entire surface of the easement.[1] Much to the contrary, however, Duke's "right to clear" is intertwined with its ability to transmit electricity and protect its equipment, such that if Callabridge's use of the land does not materially interfere with Duke's purpose in maintaining the easement, then it should be permitted. This understanding is conveyed by reviewing the easement as a whole, not its isolated parts.

> The controlling purpose of the court in construing a contract is to ascertain the intention of the parties as of the time the contract was made, and to do this consideration must be given to the purpose to be accomplished, the subject-matter of the contract, and the situation of the parties. . . . The intention of the parties is to be gathered from the entire instrument and not from detached portions. . . . An excerpt from a contract must be interpreted in context with the rest of the agreement. . . . When the language of a contract is clear and unambiguous, effect must be given to its terms, and the court, under the guise of constructions, cannot reject what the parties inserted or insert what the parties elected to omit.

*Weyerhaeuser Co. v. Light Co.*, 257 N.C. 717, 719, 127 S.E.2d 539, 541 (1962) (internal citations omitted).

The 1977 consent judgment between Duke Power Company and Dunn Development Corporation, predecessors in interest to Duke and Callabridge respectively, stated:

> There is hereby condemned and granted from the respondent, Dunn Development Corporation, to Duke Power Company, its successors and assigns, and Duke Power Company is declared to be the owner of, the property interest which is the subject of this proceeding: the easement rights being described in Exhibit "A", the property and strip easement being described in Exhibit "B", and a plat of the property and strip easement being shown on

---

1. The majority itself, although holding as such, is apparently nonetheless troubled by it. The Court holds that the trial court erred in allowing Duke to have a permanent injunction restricting Callabridge from placing any structure whatsoever on the easement. But that result is precisely what the Court's holding provides to Duke.

Exhibit "C", all of such exhibits being attached hereto and incorporated as a part of this judgment.

Exhibit "A" memorialized the fact that the parties agreed to give the following rights to Duke Power.

> The right to enter said strip of land . . . and the right, within the limits of said strip of land to erect, construct, reconstruct, replace, maintain and use towers, poles, wires, lines, cables, and all necessary and proper foundations, footings, crossarms and other appliances and fixtures for the purpose of transmitting electric power and for [Duke's] communication purposes, together with a right of way on, along, and in all of the said strip of land; together with the right for [Duke] at any time to make relocations, changes, renewals, substitutions, and additions on or to said structures within said strip; the right for [Duke] at any time to clear said strip and keep said strip clear of any and all structures, trees, fire hazards and other objects of any nature[.]

Duke also acquired the right to trim and cut trees outside of the easement that might endanger its equipment, as well as the right of ingress and egress from the easement.

None of Duke's acquired rights are absolute, however. Indeed, they are tempered by those rights reserved by Callabridge, the landowner.

> [Callabridge] shall have all other rights to said strip of land not inconsistent with the rights and easements herein contained, but [Callabridge] cannot: (1) construct streets, roads, water lines or sewer lines across said strip at an angle of less than forty-five (45) degrees . . . nor closer than 20 feet to any structures placed upon the right of way by [Duke] . . . (2) maintain fences that are not safely removed from [Duke's] structures . . . (3) dig wells on said strip; (4) place . . . underground storage tanks on said strip; (5) use said strip for burial grounds; (6) interfere with or endanger the construction, operation, or maintenance of [Duke's] facilities.

The judgment at issue did indeed give Duke the right to clear "structures, trees, fire hazards and other objects of any nature" and keep the easement clear. And at first blush, Duke's argument that Callabridge could use the land in any manner that did not involve placing a structure or object on the land seems valid, albeit severely

limiting. But to look at this part of the easement in isolation, giving it greater weight to the exclusion of other parts, would be incorrect. *Weyerhaeuser Co.*, 257 N.C. at 719, 127 S.E.2d at 541.

Callabridge's retained right to use the strip of land is subject to six specifically enumerated prohibitions; five of the six restrict Callabridge from placing structures or objects on the easement, such as streets, fences, and underground storage tanks. Implicitly then, if Duke's "right to clear" were as broad and definite as it contends, these enumerated prohibitions that curtail Callabridge's use of the easement would be superfluous. For example, Duke maintains the fence placed by Callabridge must be removed because it is an object on the easement, not because the fence may not be "safely removed" from its equipment—a specific prohibition on Callabridge's rights. Duke ignores the prohibitions or otherwise minimizes their influence on the parties' intent in the easement agreement. This type of imbalanced interpretation is contrary to our rules of construction and would actually defeat the parties' intent.

> A contract must be construed as a whole, and the intention of the parties is to be collected from the entire instrument and not from detached portions, it being necessary to consider all of its parts in order to determine the meaning of any particular part as well as of the whole. Individual clauses in an agreement and particular words must be considered in connection with the rest of the agreement, and *all parts of the writing, and every word in it, will, if possible, be given effect.*

*Robbins v. Trading Post*, 253 N.C. 474, 477, 117 S.E.2d 438, 440-41 (1960) (emphasis added) (internal quotation omitted).

Throughout this litigation one question has gone unanswered, and is the gravamen of the case: what rights does Callabridge have to its land encumbered by the easement? Duke's answer is that the rights retained by Callabridge, whatever those may be, cannot involve placing any structure or object of any nature on the easement. Callabridge responds that it has the right to use the easement in any manner that does not interfere with Duke's use. I agree with the majority that the "right to clear" within the easement is unambiguous; however, that phrase's effect on the balance of rights within the easement as a whole is where I disagree. The fact that the landowner's retained rights are couched in terminology that provides the maximum allowable breadth when dealing with a utility easement makes me hesitant to restrict them unnecessarily.

To me, the parties' respective rights are better focused by viewing the whole contract through the lens of our case law regarding easements. At the summary judgment hearing and on appeal, Duke argues interpretation of this contract is controlled by *Hanner v. Power Co.*, 34 N.C. App. 737, 239 S.E.2d 594 (1977), and Callabridge argues that *Power Company v. Rogers*, 271 N.C. 318, 156 S.E.2d 244 (1967), controls. These cases do involve interpretation of the contract rights between an easement holder and a landowner, but to properly resolve this issue, one must look further than these two cases.

In *Light Company v. Bowman*, 229 N.C. 682, 51 S.E.2d 191 (1949), our Supreme Court addressed the rights of a landowner that had constructed a large building on an easement granted to the utility company. The power company had obtained an easement by consent judgment that provided it with the right to construct and maintain power lines across defendant's land. The power company also had the right to clear trees or objects from in and around the easement that might fall on the electrical wires. Notably the power company limited its rights by stating "except for the purpose aforesaid, [which was the transmission of electricity and phones] petitioner shall not interfere with the rights of the defendants[.]" *Id.* at 684, 51 S.E.2d at 193. Thus, the landowner retained the right to use the land within the easement "for any and all purposes not inconsistent with said easement of petitioner, its successors and assigns." *Id.* Specifically enumerated as a valid use was that "defendants and their heirs and assigns shall have the right and privilege to use a portion of the land condemned in this proceeding for agricultural purposes when not necessary for the use of the plaintiff." *Id.*

The power company had requested jury instructions that asked the jury to determine whether the building's location and size was a "use of the land inconsistent with the easement." *Id.* at 686, 51 S.E.2d at 194. The Supreme Court agreed that instruction should have been given.

To draw a definite line between the reciprocal and oftentimes overlapping rights and obligations of the owners of the dominant and servient tenements in an easement is not always simple. But the general rule in regard to land condemned for use for electric power transmission lines seems to be that the landowner has the right to make use of the strip of land condemned in any manner which does not conflict with the rights of the Power Company, and which is not inconsistent with the use of the land for the pur-

poses for which condemnation was allowed, and which does not interfere with the free exercise of the easement acquired.

*Id.* at 687, 51 S.E.2d at 195 (citations omitted). Evaluating the competing interests, however, the Court stated it would be an "unwise precedent" to leave a power company without remedy to prevent construction or otherwise remove a "permanent building of the size, height, and dimensions shown." *Id.* at 690, 51 S.E.2d at 197. As such, the Court held that where

> the electric power company has erected steel towers and strung therefrom its wires carrying powerful electric current over and upon such strip of land for the purposes . . . declared, the servient owner may not be permitted, against its protest and over its objection, to erect and maintain a large permanent building, covering almost the entire width of the right of way and extending upward within a few feet of the power charged wires, and that if these facts are properly made to appear from the evidence, this would constitute a use by the landowner inconsistent with the easement and an encroachment on the rights acquired.

*Id.* at 689, 51 S.E.2d at 196.

In *United States v. Sea Gate, Inc.*, 397 F. Supp. 1351 (D.N.C. 1975), the federal district court summarized *Bowman* and stated the general rule regarding a landowner's use of an easement hinges on whether that use "obstructs or materially impairs the easement holder's use and enjoyment of his rights under the easement." *Id.* at 1358. A material impairment can be any use that generates an inconvenience, creates a safety hazard, or increases the cost of the easement holder's exercise of their rights. *Id.*; *see also* 1 Patrick Hetrick & James McLaughlin, Jr., *Webster's Real Estate Law in North Carolina* § 15-23 (5th ed. 1999) (adopting general rule). Accordingly, the court in *Sea Gate* found that unchecked home construction within an easement owned by the Government on either side of the Atlantic Intercoastal Waterway created a material impairment to the rights given to the Government under the easement. But, the Court held that building homes only on one side of the waterway, and in further specified areas, would not materially impair the rights of the easement holder and therefore would be allowed. *Id.* at 1359.

The Court today dismisses the general rule of material impairment on the grounds that the parties' rights expressed in the consent judgment are unambiguous; in other words, the parties intended to contract against that general rule. As such, there is no room for appli-

cation of general principles, only contractual interpretation. However, the overall language of this consent judgment expresses a balance of rights wholly consistent with the general rule.

In *Rogers* the Supreme Court reviewed an easement remarkably similar to the easement in dispute here, and assessed the parties' rights under the general rule. The consent judgment between the parties there allowed the power company to construct and maintain electric transmission lines over the land as well as "the right to keep the right-of-way clear of all structures, trees, fire hazards, and other natural objects of any nature[.]" *Rogers*, 271 N.C. at 318, 156 S.E.2d at 245. These rights acquired by the power company were limited by the retained rights of the landowner, which included "all other rights to said strip of land not inconsistent with the rights and prohibitions herein contained[.]" *Id.* at 319, 156 S.E.2d at 246.

The *Rogers* court determined that the trial court erred by instructing the jury that the easement's value was to be calculated by determining the condemned land's full value, as if taken in fee.

Petitioner does not acquire the right to occupy the surface of the 0.93-acre right-of-way to the *total* exclusion of respondents. It is condemning only an easement; respondents retain the fee in the land. **Subject to the prohibitions specifically enumerated in the petition, they may make any use of the surface of the strip which will not interfere with petitioner's transmission of electricity.** *Carolina Power and Light Co. v. Bowman*, 229 N.C. 682, 51 S.E.2d 191 [(1949)]. Necessarily, that use will be limited; but it cannot be said that the right to use it and to traverse it freely has no value to them.

*Id.* at 320, 156 S.E.2d at 247 (italicized emphasis in original, bold emphasis added). The Court stated that the trial court instructed the jury as if the easement granted to the power company had been the right to build a road or railroad "in which the bare fee remaining in the landowner, for all practical purposes, has no value to him and the value of the easement is virtually the value of the land it embraces." *Id.* at 321, 156 S.E.2d at 247.

This general rule—that interference is the guiding principle in determining a landowner's use of a power company's easement—expressed in *Bowman, Sea Gate,* and *Rogers* has not been materially modified over time. *See Falkson v. Clayton Land Corp.,* 174 N.C. App. 616, 617, 621 S.E.2d 215, 216-17 (2005) (citing *Bowman* as gen-

eral rule). Thus, I see no reason to view Duke and Callabridge's easement any differently than the Supreme Court saw an almost identical balance of rights nearly ten years before these parties' predecessors entered into their markedly similar agreement. Duke's right to "at any time to clear said strip and keep said strip clear of any and all structures, trees, fire hazards and other objects of any nature," is not materially different than the power company's right in *Rogers* "to keep the right-of-way clear of all structures, trees, fire hazards, and other natural objects of any nature[.]" *Rogers*, 271 N.C. at 318, 156 S.E.2d at 245. And both Callabridge and the landowner in *Rogers* retained the substantial right to "all other rights to said strip of land not inconsistent with the rights and prohibitions herein contained[.]" *Id.* at 319, 156 S.E.2d at 246. Thus, to read Duke's right to keep the strip clear of any structures as the right to exclusively and continually possess the surface would extend to Duke a right greater than Callabridge's predecessors in interest agreed to. In opposition to the balance struck by the *Bowman* court, the Court today sets an unwise precedent that leaves landowners with no remedy against an overzealous exercise of disjunctive easement rights by the dominant tenement. The appropriate balance, when called for in agreements such as the one *sub judice*, is whether the landowner's use of the easement materially impairs the set of rights given to the utility company.

*Hanner* did not need to apply a general rule to strike the appropriate balance of rights between the parties because, unlike *Rogers* and here, the parties unambiguously agreed within the contract that the landowners retained rights were severely limited. Specifically included in the easement rights conveyed to the power company was indeed the right "to keep said strip of land free and clear of any or all structures, trees and other objects of any nature except those placed in or upon same by the Power Company[.]" *Hanner*, 34 N.C. App. at 737, 239 S.E.2d at 595. Importantly, however, the specific rights retained by the landowner were not all those inconsistent with the power company's use of the easement, but instead "that the grantor(s) may use said strip of land for growing such crops and maintaining such fences as may not interfere with the use of said right of way by the Power Company for the purposes hereinabove [sic] mentioned." *Id.* at 738, 239 S.E.2d at 595. Thus the landowners had to take the nearly indefensible position that their trees were "crops."[2]

---

2. The *Hanner* court did not hold that the power company's right to clear was unambiguous, as a matter of law, and controls in every circumstance; rather, the *Hanner* court held that "crops," as a matter of law, was unambiguous.

The contract specifically gave defendant the right to clear trees from the right-of-way, and plaintiffs' right to grow "crops" was specifically limited by this provision. By the terms of the contract, defendant did not, by agreeing at various times to allow trees to remain, waive its right as stated in the contract.

*Id.* at 738-39, 239 S.E.2d at 595. The Court found the appropriate intent of the parties by looking no further than the contract's language; the landowner had not reserved all rights not inconsistent with the easement holder's rights, but merely the right to grow crops. Accordingly, *Hanner* is not applicable here.

Application of these principles to the agreement at bar fail to support a judgment in favor of Duke as a matter of law. By viewing the right to clear the land in context of the whole agreement, and our case law, the balance of rights the parties intended is consistent with Callabridge's assessment. Thus, I would reverse the trial court's order of summary judgment in favor of Duke. Moreover, since neither party disputes the fact that the current objects do *not* create a safety hazard, generate an inconvenience, or increase the cost to Duke of exercising its rights under the easement,[3] then I would hold the trial court erred by not granting summary judgment in favor of Callabridge.

———

3. Callabridge concedes that if the current objects ever do materially interfere with Duke's rights to transmit electricity, Duke has the authority under the consent judgment to immediately remove them.