PETER M. BICKET, RICHARD L. VON TACKY, WILLIAM T. BURGESS, R. J. RICHARDSON, ROY C. HACKLEY, JR., COLEMAN ROMAIN, LOUIS G. CREVELING, WILLIAM E. GENTNER, ELMER L. NICHOLSON, RICHARD A. PETTY, TOM BROOKS, AND WARREN I. KNOUFF, PLAINTIFFS v. McLEAN SECURITIES, INC., PURCELL CO., INC., (FORMERLY DIAMONDHEAD CORPORATION), PINEHURST, INCORPORATED, PINEHURST COUNTRY CLUB, INC., VICTOR PALMIERI AND COMPANY INCORPORATED, HOWARD C. MORGAN, TRUSTEE, STEVEN K. BAKER, TRUSTEE, B. CHARLES MILNER, TRUSTEE, CITIBANK, N.A., CHASE MANHATTAN BANK, N.A., THE FIRST NATIONAL BANK OF CHICAGO, FIRST PENNSYLVANIA BANK, N.A., FIRST NATIONAL STATE BANK OF NEW JERSEY, WELLS FARGO BANK, N.A., CROCKER NATIONAL BANK, AND WACHOVIA BANK AND TRUST COMPANY, N.A., DEFENDANTS

Nos. COA95-441, COA95-889

(Filed 3 December 1996)

**1. Judgments § 132 (NCI4th)— consent judgment—country club—maintenance and golf tournaments—erroneous interpretation**

The terms "maintenance" and "golf tournaments" in a 1980 consent judgment between the original owner and the members of a country club were used in their generic sense and unambiguous; therefore, the trial court was not authorized to consider

BICKET v. McLEAN SECURITIES, INC.

[124 N.C. App. 548 (1996)]

parol evidence and exceeded its authority by specifically limiting the meaning of "golf tournaments" and by placing qualifications on the scheduling of golf course closures due to maintenance.

**Am Jur 2d, Judgments §§ 207-227.**

**2. Judgments § 132 (NCI4th)— consent judgment—golf starting times—applicable golf courses**

A provision of a consent judgment giving country club members a right to use all existing golf courses and to reserve starting times ahead of resort guests applied only to golf courses in existence at the time of entry of the consent judgment, and the trial court erred by expanding this provision to include golf courses not in existence at that time.

**Am Jur 2d, Judgments §§ 207-227.**

**3. Judgments § 132 (NCI4th)— consent judgment—use of country club facilities—continued existence of facilities**

A provision of a consent judgment which gives members the right to use enumerated country club facilities and properties so long as they are maintained by defendants was improperly interpreted by the trial court to require defendants to ensure the continued existence of those facilities and properties.

**Am Jur 2d, Judgments §§ 207-227.**

**4. Judgments § 132 (NCI4th)— consent judgment—use of clubhouse—required services**

The trial court properly found that a consent judgment giving country club members exclusive use of a clubhouse would forbid the country club owner from leasing the clubhouse to a proprietary, commercial or political entity, but the trial court erred by finding that the parties intended that all services provided in the clubhouse at the time the consent judgment was entered should continue to be provided.

**Am Jur 2d, Judgments §§ 207-227.**

**5. Judgments § 132 (NCI4th)— consent judgment—country club membership—transfer fees—ambiguous provision—parol evidence**

The cessation of the existence of the original corporate owner of a country club rendered ambiguous a provision of a consent judgment relating membership transfer fees to the "cur-

rent initiation fee" being charged to purchasers of property from the corporation, and the trial court was authorized to consider parol evidence to determine the intention of the parties as to the meaning of this provision.

**Am Jur 2d, Judgments §§ 207-227.**

6. **Judgments § 132 (NCI4th)— consent judgment—country club—membership transfer—membership categories— Village of Pinehurst—private golf carts—protected members—erroneous interpretations**

The trial court erred in its interpretations of a 1980 consent judgment by placing limitations on the right of a country club's board of directors to approve the transfer or upgrade of membership, by restricting the country club owner's right to create new categories of membership, by ruling that the "Village of Pinehurst" included areas developed after entry of the consent judgment, by extending the consent judgment's protections with respect to the use of privately-owned golf carts to members not parties to the consent judgment, and by concluding that members who joined the country club after entry of the consent judgment are protected by that judgment.

**Am Jur 2d, Judgments §§ 207-227.**

7. **Judgments § 132 (NCI4th)— consent judgment—country club—increase in dues and fees—existing golf courses— resort guest**

The trial court did not err in concluding that the formula currently used by a country club's owner to calculate permissible annual increases in membership dues and fees pursuant to the Consumer Price Index complies with the provisions of a 1980 consent judgment; nor did the trial court err by interpreting the phrase "all existing golf courses" in the consent judgment to mean only courses in existence at the time of entry of the consent judgment. However, the trial court erred in its interpretation of "Resort guest" because that term is ambiguous in the context in which it was used, the trial court should have considered parol evidence to determine the intention of the parties to the consent judgment, and the trial court failed to make the necessary findings so as to provide a sufficient basis for appellate review.

**Am Jur 2d, Judgments §§ 207-227.**

BICKET v. McLEAN SECURITIES, INC.

[124 N.C. App. 548 (1996)]

8. **Judgments § 133 (NCI4th)— consent judgment—interpretation of provisions—when parol evidence considered**

When the provisions of a consent judgment are unambiguous, the trial court is limited to an interpretation in keeping with the express language of the document and without consideration of parol evidence. However, the trial court is required to interpret ambiguous provisions of a consent judgment consistent with the intention of the parties to the judgment and by considering parol evidence if necessary.

**Am Jur 2d, Judgments §§ 219-220.**

Appeal by plaintiffs and defendants from order entered 28 December 1994 by Judge F. Fetzer Mills in Moore County Superior Court. Heard in the Court of Appeals 26 January 1996. Reassigned to a differently constituted panel for decision by order dated 14 October 1996.

*Kitchin, Neal, Webb & Futrell, P.A. by Henry L. Kitchin and Stephan R. Futrell, for plaintiffs.*

*Van Camp, West, Hayes & Meacham, P.A. by James R. Van Camp and Michael J. Newman, for defendants.*

WYNN, Judge.

Throughout the 1970s, Diamondhead Corporation ("Diamondhead") developed and sold lots and memberships in the Pinehurst Country Club. Diamondhead owned Pinehurst, Inc., which in turn owned Pinehurst Country Club, Inc. which operated the Pinehurst Country Club. Diamondhead also owned and operated Pinehurst Hotel and Country Club (later called Pinehurst Resort and Country Club), a large public resort consisting of a hotel, villas, condominiums, and a conference center.

In the late 1970s, a dispute arose between Diamondhead and members of the Pinehurst Country Club concerning the nature and extent of the members' privileges. In January 1980, a group of Pinehurst Country Club members filed a class action lawsuit seeking a declaration of their rights. They contended that the defendants had made certain representations to induce them to purchase property in Pinehurst and to become members of the Pinehurst Country Club. That suit ended in the Final Consent Judgment which is at issue in the present case.

In 1984, Resorts of Pinehurst, Inc. ("Resorts") purchased the Pinehurst Country Club and succeeded to the interests of the original owner-defendants. Around 1990, a dispute arose between Resorts and members of the Pinehurst Country Club over certain provisions of the Final Consent Judgment, *inter alia* the allocation of starting times on certain golf courses, the creation of additional classes of membership, the increase in initiation fees, the provision of certain amenities at the Pinehurst Country Club and the applicability of the provisions in the Final Consent Judgment to members who joined the Pinehurst Country Club after the entry of that judgment. In July 1991, several members of the Pinehurst Country Club filed a motion in the cause seeking to hold Resorts in contempt alleging violation of some of the provisions of the Final Consent Judgment. They subsequently withdrew that motion and, as agreed upon by the parties, filed an action for a declaratory judgment asking the court to "interpret, construe and clarify certain provisions of the said 1980 Final Consent Judgment." After a hearing on the matter, the court rendered its judgment and both parties appeal certain provisions in that order. This Court consolidated those appeals.

---

Plaintiffs and defendants each make several assignments of error which essentially present to this Court one issue: Whether the trial court impermissibly modified the Final Consent Judgment.

Recently, in *Walton v. City of Raleigh*, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996), our Supreme Court reaffirmed that "[a] consent judgment is a court-approved contract subject to the rules of contract interpretation." The primary focus in interpreting a contract is the original intention of the parties. *Jefferson-Pilot Life Ins. Co. v. Smith Helms Mulliss & Moore*, 110 N.C. App. 78, 82, 429 S.E.2d 183, 186 (1993).

"If the plain language of a contract is clear, the [original] intention of the parties is inferred from the words of the contract." *Walton*, 342 N.C. at 881, 467 S.E.2d at 411. The trial court's determination of original intent is a question of fact. Issues of fact resolved by the trial court in a declaratory judgment action are "conclusive on appeal if supported by competent evidence in the record, even if there exists evidence to the contrary." *Miesch v. Ocean Dunes Homeowners Assn.*, 120 N.C. App. 559, 561, 464 S.E.2d 64, 67 (1995), *disc. review denied*, 342 N.C. 657, 467 S.E.2d 717 (1996).

On the other hand, where an ambiguity exists, the court may step in and consider parol evidence of the parties' intent in forming the

contract. *Lattimore v. Fisher's Food Shoppe, Inc.*, 313 N.C. 467, 474, 329 S.E.2d 346, 350 (1985). "An ambiguity exists where the language of a contract is fairly and reasonably susceptible to either of the constructions asserted by the parties." *Glover v. First Union National Bank*, 109 N.C. App. 451, 456, 428 S.E.2d 206, 209 (1993). The trial court's determination of whether the language of a contract is ambiguous is a question of law; accordingly, our review of that determination is de novo. *See* 17A Am. Jur. 2d *Contracts* § 339 (1991); *Humphries v. City of Jacksonville*, 300 N.C. 186, 187, 265 S.E.2d 189, 190 (1980).

In the case before us both parties contend that the trial court erred in interpreting certain provisions of the Final Consent Judgment either by construing an unambiguous provision in conflict with its express language or by construing an ambiguous provision in a manner inconsistent with the intention of the original parties.

## I. Defendants' Appeal

### A. *Final Consent Judgment—Paragraph 7*

Defendants first assign as error the trial court's interpretation in the Declaratory Judgment of several provisions in paragraph 7 of the Final Consent Judgment which provides:

7. In addition to the foregoing rights applicable to each separate subclass of members of the principal class, each member of the principal class had obtained certain other rights in and to the use of the facilities and properties of Pinehurst, Incorporated, and its subsidiaries, so long as said properties and facilities are operated and maintained by Pinehurst, Incorporated, its parent corporations, subsidiary corporations, successors, or assigns, which rights are not subject to change by the defendants and which rights include the following:

(a) The use of all existing golf courses;

(b) The use of the existing golf course driving ranges;

(c) The use of the existing tennis club and tennis courts;

(d) The use of the riding club including lounge, tack room, stables and trails;

(e) The use of the Gun Club including skeet and trap ranges;

(f) The use of the archery range including field and bow hunter ranges;

(g) The use of the Pinehills (Colonial Pines) Recreational and Swim Club and the existing neighborhood recreation centers and swimming pools in Units 1 and 4;

(h) The use of the Members Private Clubhouse, which use shall be exclusively by present and future members of Pinehurst Country Club, Inc., and officers and managerial employees of the defendants and their bona fide guests;

(i) The use of Lake Pinehurst;

(j) The use of the Lake Pinehurst Marina;

(k) The right to reserve one full day ahead of Resort guests up to 50% of the available starting times on any given day. Any of such starting times not so reserved by a member shall thereafter be available to both members and Resort guests without preference. The remaining 50% of the available daily starting times are reserved for Resort guests; provided, any of such starting times not utilized by Resort guests shall be available on the day of play to both members of Pinehurst Country Club, Inc. and Resort guests without preference (Nothing in this subparagraph shall preclude the closing of one or more courses for maintenance, golf tournaments and other such purposes.);

(l) The right to join the Walking Club, which entitles the member to play golf using a carry bag daily after 4:00 p.m. Eastern Standard Time or 5:00 p.m. Eastern Daylight Time, whichever is applicable, subject to course availability and, as to Active and Inactive Resident Members, subject to the payment of the green fees provided for in subparagraph 6(e) and (f), respectively.

In addition to any and all fees provided for in paragraph 6, above, fees are imposed for the use of the Driving Range, Gun Club, Archery Range, Riding Club, and boats on Lake Pinehurst and may be imposed for the use of facilities hereafter constructed. Such fees (other than dues) are subject to change at any time, in the discretion of the defendant Pinehurst, Incorporated.

The use of the above facilities and properties [excluding the use of the Members Private Clubhouse except as set out in subparagraph (h) above] may be extended by Pinehurst, Incorporated to future purchasers of property from or through

Pinehurst, Incorporated, its subsidiaries and affiliates, future members of Pinehurst Country Club, Inc. and Resort and other guests of Pinehurst, Incorporated, or its affiliates and subsidiaries, upon such terms and conditions as Pinehurst, Incorporated shall determine. Any membership hereafter purchased directly from Pinehurst Country Club, Inc. shall provide for an initiation fee of at least $1,000 and, monthly dues and other fees equal to or greater than the dues and fees paid by the then Inactive Resident members.

Use of the above facilities and properties shall be subject to and in accordance with reasonable rules and regulations imposed by Pinehurst, Incorporated or its affiliates and subsidiaries.

[1] Defendants argue that the trial court exceeded its authority in interpreting the terms "maintenance" and "golf tournaments" as used in paragraph 7 of the Final Consent Judgment. The trial court stated:

(c) The term "tournament," as used in the parenthetical of paragraph 7(k), is limited to those traditional tournaments of national or regional scope which have from time to time been held at the Pinehurst Country Club golf course, and are limited to the following tournaments:

North-South Men's Amateur; North-South Women's Amateur; North-South Senior Men's Amateur; North-South Senior Women's Amateur; North-South Junior Boys'; Donald Ross Junior Boys' and Girls'; and any event conducted at the national or regional level by USGA, PGA, Carolinas Golf Association, Carolinas PGA, and which for entry requires qualification on a nation or regional level.

(d) The term "maintenance" shall include scheduled and unscheduled maintenance which is for legitimate course maintenance and such express limitations as shall be dictated by weather and seasonal conditions then prevailing. Any such closure for maintenance shall be scheduled in such a way as to give maximum notice to the membership under the conditions then existing, and shall further be scheduled in such a way as to minimize the loss of available starting times.

We find that the terms "maintenance" and "golf tournaments" as used in the Final Consent Judgment are unambiguous. Both terms were used in their generic sense and the express language of the pro-

**BICKET v. McLEAN SECURITIES, INC.**

[124 N.C. App. 548 (1996)]

visions in which those terms are found contain none of the words of limitation that the trial court attributed to the terms. Since those terms are unambiguous, the trial court was not empowered to consider parol evidence. Thus, the trial court exceeded its authority by specifically limiting the meaning of "golf tournaments" and by placing qualifications on the scheduling of course closures due to maintenance. We therefore remand this issue to the trial court for modification of the Declaratory Judgment consistent with this opinion.

[2] Defendants also argue that the trial court erred in its interpretation of the starting times provision of paragraph 7(k) which states that members of the principal class have "[t]he right to reserve one full day ahead of Resort guests up to 50% of the available starting times on any given day." The trial court found this provision to mean that "the members of Pinehurst Country Club shall have the right to reserve one full day ahead of a resort guest up to fifty per cent of all available starting times." We find this portion of the trial court's interpretation of that provision to be consistent with the express, unambiguous language of the Final Consent Judgment. However, the trial court went on to add that this provision applied to "each and every golf course." In so doing, the trial court expanded the number of golf courses that members were entitled to use under the plain language of paragraph 7(a). Under that paragraph members have the right to use "all existing golf courses," which at the time of entry of the Final Consent Judgment were courses one through six. Therefore, the preferential starting times provision of paragraph 7(k), when read in conjunction with paragraph 7(a), entitles class members to reserve one full day ahead of a resort guest up to fifty per cent of all available starting times *on courses one through six*. Accordingly, we remand for modification of the Declaratory Judgment to limit the preferential starting times provision to courses one through six.

[3] Defendants next argue that the trial court erred in requiring Resorts to maintain, in perpetuity, each of the properties and facilities set forth in paragraph 7(a)-(j) of the Final Consent Judgment. The trial court stated:

> The term "which rights include the following," as it appears in the beginning paragraph of paragraph 7 of the Final Consent Judgment, is intended to mean certain specific rights of usage that are included within the general classification of rights of usage which are those matters designated as (a) through (l) in paragraph 7 of the Final Consent Judgment. Nothing herein shall

**BICKET v. McLEAN SECURITIES, INC.**

[124 N.C. App. 548 (1996)]

allow the owner and operator of the Resort selectively to eliminate any listed amenity or the use thereof without the consent of the protected class.

The term "as long as said facilities and properties are operated and maintained by the Respondents" means that the Respondents are not required to operate and maintain the Resort complex as a whole, but it is not intended to allow the Respondents to selectively eliminate specific portions thereof that are enumerated in paragraph 7 of the Final Consent Judgment.

We agree with the defendants that this interpretation is unnecessary because the beginning provisions of paragraph 7 of the Final Consent Judgment are unambiguous. The plain language of that provision gives class members the right to use the facilities and properties enumerated so long as those facilities are maintained by defendants. Class members' right to use those facilities and properties *so long as they are maintained by defendants* is not subject to change. The trial court's interpretation requiring defendants to insure the continued existence of the amenities listed is inconsistent with the express, unambiguous language of the provision and is therefore erroneous. Accordingly, we remand this issue to the trial court for modification of the Declaratory Judgment consistent with this opinion.

[4] Defendants next assign as error the trial court's interpretation of paragraph 7(h) concerning members' exclusive use of the Members Private Clubhouse. The trial court found that "the parties intended that the reservation of the exclusive use to members would forbid the owner of Pinehurst Country Club and Resort Properties from leasing said clubhouse or any part thereof to proprietary, commercial, or political entities." Such an interpretation is consistent with the unambiguous language of the provision at issue. However, the trial court went on to add that "the parties also intended that the services provided in the Members' Private Clubhouse at the time the Final Consent Judgment was entered, including (but not limited to) the health spa, the dining room, and locker rooms, should continue to be provided." Nothing in the express and unambiguous language of paragraph 7(h) would allow such an interpretation. Thus, the trial court erred in adding this additional qualification to its interpretation of the provision in question. We remand this issue to the trial court for modification of the Declaratory Judgment by deleting the words: "The

Court further interprets that the parties also intended that the services provided in the Members' Private Clubhouse at the time the Final Consent Judgment was entered, including (but not limited to) the health spa, the dining room, and locker rooms, should continue to be provided."

### B. Final Consent Judgment—Paragraph 6

[5] Defendants next assign as error the trial court's interpretation in the Declaratory Judgment of several provisions in paragraph 6 of the Final Consent Judgment which outlines the rights of each class of membership. For those classes of membership which are transferable paragraph 6 provides: "Membership is transferable with the approval of the Board of Directors of Pinehurst Country Club, Inc. and upon the payment of a transfer fee." In addition, "the transfer fee shall not exceed thirty percent of the then current initiation fee for the applicable class of membership transferred. (In the case of a Resident membership, 'current initiation fee' refers to the amount then being charged to property purchasers from Pinehurst, Incorporated.)" Paragraph 6 of the Final Consent Judgment concludes:

The above stated rights are appurtenant only to the existing memberships and nothing in this Judgment shall preclude Pinehurst Country Club, Inc. and its successors from hereafter establishing (i) additional classes of membership in Pinehurst Country Club, Inc.; or (ii) different rights for persons whose class of membership is purchased directly from Pinehurst Country Club, Inc., after this date. Any such future memberships shall provide for an initiation fee of at least $1,000 and monthly dues and other fees equal to or greater than the dues and fees charged to or paid by the then Inactive Resident members of Pinehurst Country Club, Inc.

As used herein, Village of Pinehurst refers to and includes all property in Old Town as shown on the attached map together with all lots in the Units developed and sold by Pinehurst, Incorporated.

Defendants assign as error the trial court's interpretation of "current initiation fee" as it applies to the transfer fee allowed for Resident Members. Since Pinehurst, Incorporated ceased doing business in 1982, the trial court fixed the initiation fee from which allowable transfer fees are determined at the amount of the initiation fee charged to the last purchaser from Pinehurst, Incorporated.

BICKET v. McLEAN SECURITIES, INC.

[124 N.C. App. 548 (1996)]

We hold that the cessation of Pinehurst, Incorporated has rendered the provision in question ambiguous. The trial court was thus authorized to consider parol evidence to determine the original parties' intention as to the meaning of this provision. After hearing evidence, a trial court must make findings of fact as to the original parties' intent and those findings must support its ultimate judgment. However, the trial court in the subject case failed to make any findings of fact as to the original parties' intent, instead basing its conclusions "upon the language . . . of the Final Consent Judgment, and in consideration of the evidence presented." By so doing, the trial court has failed to provide this Court with a sufficient basis upon which to review the propriety of its judgment. Therefore, we must remand to the trial court for appropriate findings of fact on this issue.

[6] Defendants next assign as error the trial court's interpretation of the provisions requiring the approval of the Board of Directors upon transfer or upgrade of membership. The trial court concluded:

> [T]he term "with the approval of the Board of Directors" means that the Board of Directors of Pinehurst Country Club, Inc. shall have the right to approve or disapprove individual requests for membership in each of the subclasses of membership set out in paragraph 6 of the Final Consent Judgment. Such requests for membership shall be by application resulting from the direct sale of a "new" property in the Village of Pinehurst or by transfer of an existing membership. This approval or disapproval of the Board of Directors shall be based on the standards of reputation, good moral standards, and creditworthiness previously established in the Rules and Regulations of Pinehurst Country Club, Inc., and shall not be based on arbitrary considerations or policy decisions forestalling an individual membership application, or acceptance, or precluding, or denying approval as to any subclass as a group.

Unlike the trial court's interpretation, the express and unambiguous language of the Final Consent Judgment contains no limitation on the Board's approval or disapproval. Thus, the trial court's interpretation of this provision went beyond the express language used by the original parties and qualified the accepted basis for granting or withholding the Board's approval when such a qualification was not included originally. Accordingly, we remand this issue to the trial court for modification of the Declaratory Judgment to delete the limitation on the Board's approval or disapproval of individual requests

for membership in each of the subclasses of membership set out in paragraph 6 of the Final Consent Judgment.

Defendants next argue that the trial court erred in restricting Resorts' right to create new categories of membership as provided in paragraph 6(k) of the Final Consent Judgment. The trial court concluded that "the owners of Pinehurst Country Club may in their discretion create additional classes of memberships or different rights for persons whose class of membership is purchased directly from Pinehurst Country Club, Inc." This interpretation is clearly consistent with the unambiguous language of the Final Consent Judgment. However, the trial court went on to conclude that the "Tier Two" category of membership created in 1985, did not comply with the Final Consent Judgment because the new membership class did not have "substantially different rights and privileges and obligations from those classes of memberhsip set forth in paragraph 6 of the Final Consent Judgment." It then outlined procedures for the subsequent reinstatement of memberships which had been terminated, and added requirements that members of any new category of membership must reside in the Village of Pinehurst and that Resorts notify existing members prior to creating a new class. These qualifications are beyond the scope of the express and unambiguous language of the provision in question. We therefore remand this issue for modification of the Declaratory Judgment to delete the restrictions that new classes of membership must have substantially different rights, privileges and obligations from those set out in paragraph 6 of the Final Consent Judgment and that members of any new category of membership must reside in the Village of Pinehurst. We remand for further modification of the Declaratory Judgment to omit the procedures for subsequent reinstatement of memberships which had been terminated and to eliminate the requirement that all classes of membership affected by the creation of a new class be notified in writing prior to its creation.

Defendants next argue that the trial court erred by restricting membership in the Pinehurst Country Club to lots in units or planning districts platted or developed as of the date of the Declaratory Judgment. Paragraph 6 of the Final Consent Judgment which outlines the rights of each class of membership provides that to qualify for some classes of membership, the member must own property in the Village of Pinehurst, while others need not. Following that provision, the Final Consent Judgment defines "Village of Pinehurst" as it is used in that section. The trial court ordered:

**BICKET v. McLEAN SECURITIES, INC.**

[124 N.C. App. 548 (1996)]

[I]n addition to the primary definition set forth in the Final Consent Judgment all lots in the units or planning districts shown on the Master Use Plan which have been developed and platted up to the date of this Declaratory Judgment shall be considered to be part of the "Village of Pinehurst" as that term is used in the Final Consent Judgment.

The definition of "Village of Pinehurst" in the Final Consent Judgment is an unambiguous description of the boundaries of that area as it pertains to the membership requirements for the various classes of membership described in paragraph 6 and whose rights were determined by the 1980 Final Consent Judgment. As such, it has no application beyond the parties to the 1980 agreement and the trial court's interpretation of "Village of Pinehurst" to include areas developed after the entry of the Final Consent Judgment and up to the entry of the Declaratory Judgment is erroneous. We therefore remand this issue for modification of the Declaratory Judgment to limit the definition of "Village of Pinehurst" to areas platted or developed as of the entry of the Final Consent Judgment.

### C. Final Consent Judgment—Paragraph 8

Defendants next assign as error the trial court's interpretation of paragraph 8 of the Final Consent Judgment which provides that certain specifically enumerated classes of membership "have the personal, nontransferable and nonassignable right for his or her lifetime to own and operate a golf cart upon the trailways of Pinehurst Country Club, Inc., for an annual fee." In addition, "[i]ndividuals not within one of the categories described above may not operate a privately-owned golf cart on the trailways of Pinehurst Country Club, Inc., pending further action by the Board of Directors of Pinehurst, Incorporated and a public announcement by the Board of a change in such policy."

The trial court found "that this policy of prohibiting use of privately owned carts was changed in 1985 so that additional members were allowed to own and operate a golf cart on the trailways of Pinehurst Country Club, Inc." Since this finding of fact is supported by competent evidence in the record, it is conclusive on appeal. *See Miesch v. Ocean Dunes Homeowners Assn.*, 120 N.C. App. 559, 561, 464 S.E.2d 64, 67 (1995), *disc. review denied*, 342 N.C. 657, 467 S.E.2d 717 (1996). However, this finding does not support the trial court's ultimate conclusion that "those members allowed to own and operate golf carts [under the new policy] are entitled to the same protections

of the Final Consent Judgment as were the original cart owners." The plain and unambiguous language of the Final Consent Judgment contains *no such entitlement.* "[I]t is not the province of the courts to construe contracts broader than the parties have elected to make them, or to award benefits where none were intended." *Carter v. Insurance Co.*, 208 N.C. 665, 668, 182 S.E. 106, 107 (1935). Thus, the trial court erred by extending the Final Consent Judgment's protections with respect to the use of privately-owned golf carts to members not parties to the 1980 agreement. We remand this issue for modification of the Declaratory Judgment to delete the conclusion that the additional members allowed to own and operate golf carts under the new policy are entitled to the protections of the Final Consent Judgment.

### D. *Final Consent Judgment—Protected Class*

Defendants finally assign as error the trial court's conclusion that members who joined the Pinehurst Country Club after the entry of the Final Consent Judgment are within the class protected by that agreement. The Final Consent Judgment states:

> This action is certified as a class action pursuant to the provisions of Rule 23 of the North Carolina Rules of Civil Procedure in which the class represented by the named plaintiffs is defined as the entire membership of Pinehurst Country Club, Inc (other than those on the President's List) as of the 1st day of October, 1980.

The plain, unambiguous language of this provision limits the class to those holding membership as of 1 October 1980. The trial court, however, extended the protections of the Final Consent Judgment not only to those within the classes of membership as of the entry of that judgment, but also to those memberships which have come into existence since the Final Consent Judgment. Such an interpretation exceeds the trial court's authority to interpret the Final Consent Judgment consistent with its express, unambiguous terms and is therefore erroneous. We remand this issue for modification of the Declaratory Judgment to limit the protections of the Final Consent Judgment to only those holding membership as of 1 October 1980.

### II. Plaintiffs' Appeal

### A. *Increase in Dues and Fees*

**[7]** Plaintiffs first contend that the trial court erred in failing to clarify the Final Consent Judgment's provision limiting annual increases

in dues and fees. They argue that it was error for the trial court to declare as a matter of law that "the formula currently employed by Resorts of Pinehurst, Incorporated, for calculating permissible annual increases in membership dues and fees pursuant to the Consumer Price Index is both mathematically correct and complies with the provisions of the Final Consent Judgment."

The Final Consent Judgment provides:

10. All membership dues and the annual fees charged for use of a privately-owned golf cart are fixed as of January 1, 1980 (base fees and base dues) and shall not be increased more than once in any calendar year subsequent to 1980; provided, however, on the effective date of any such increase, the total percentage increase in such dues and fees since January 1, 1980 shall not exceed the percentage increase in the Consumer Price Index since December 31, 1979.

The record indicates that the formula currently being employed to calculate the present year's dues is:

$$\frac{\text{Last Year's CPI—Dec. '79 CPI}}{\text{Dec. '79 CPI}} = \text{Rate Increase}$$

Rate Increase x 1980 Dues = Current Year's Permissible Dues

We find that this formula complies with the express language of the Final Consent Judgment and the trial court did not err in so stating. By concluding that the formula currently employed by Resorts is consistent with the requirements of the Final Consent Judgment, the trial court effectively clarified and interpreted the provision at issue and plaintiffs' argument to the contrary is without merit.

### B. "All Existing Golf Courses"

Plaintiffs next contend that the trial court erred in interpreting the phrase "all existing golf courses" as used in paragraph 7(a) of the Final Consent Judgment to mean only courses one through six at Pinehurst Country Club. The phrase at issue unambiguously refers to all golf courses in existence as of the entry of the Final Consent Judgment in 1980. The record indicates that only courses one through six were completed and in existence at that time. Thus, the trial court's interpretation is consistent with the plain meaning of the phrase as it is used in the Final Consent Judgment.

## C. "Resort Guest"

Plaintiffs next take issue with the trial court's interpretation of the term "Resort guest" as used in paragraph 7(k) of the Final Consent Judgment. The trial court stated that "the term 'resort guest,' as used in paragraph 7(k), was intended to mean any guest of the owner of the Pinehurst Country Club regardless of whether that guest is a paying customer at the Pinehurst Hotel." This interpretation is consistent with defendants' argument that the term "Resort guest" should be interpreted as "any guest of the Resort, whether staying in the Hotel, Villas, or anywhere else."

Plaintiffs, however, contend that the trial court impermissibly modified the Final Consent Judgment by expanding the definition of "Resort guest" to include any paying customer of Resorts, whether or not that customer is staying at the Pinehurst Hotel or Resorts' condominiums or villas. We hold that the term in question is ambiguous in the context in which it is used. The trial court was thus authorized to consider parol evidence as to the original parties' intention. However, in this case the trial court failed to make the necessary findings of fact so as to provide this Court with a sufficient basis for review. In light of this deficiency, we must remand to the trial court for appropriate findings of fact on this issue.

## III. Conclusion

[8] In rendering its Declaratory Judgment the trial court was authorized first and foremost to determine whether the various provisions of the Final Consent Judgment were ambiguous. Where the provisions were unambiguous, the trial court was limited to an interpretation in keeping with the express language of the document and without considering parol evidence. "The court cannot under the guise of interpretation rewrite the contract for the parties." *Cherry, Bekaert & Holland v. Worsham*, 81 N.C. App. 116, 120, 344 S.E.2d 97, 100 (1986).

Where the provisions were ambiguous, the trial court was required to interpret the provisions in question, considering parol evidence if necessary, consistent with the intention of the original parties to the Final Consent Judgment in 1980. "The courts' province is to construe, not make contracts for parties, and courts cannot relieve a party from a contract because it is a hard one." *Belk's Department Store v. Insurance Co.*, 208 N.C. 267, 270, 180 S.E. 63, 65 (1935).

We conclude that the trial court impermissibly modified certain provisions of the Final Consent Judgment and failed to make sufficient findings of fact to support its interpretation of other provisions. Thus, for the reasons set forth in this opinion, we affirm in part, reverse in part and remand in part for findings of fact and entry of judgment consistent with this opinion.

Affirmed in part, reversed in part and remanded.

Chief Judge ARNOLD and Judge SMITH concur.