PETER M. BICKET, RICHARD L. VON TACKY, WILLIAM T. BURGESS, R.J. RICHARDSON, ROY C. HACKLEY, JR., COLEMAN ROMAIN, LOUIS G. CREVELING, WILLIAM E. GENTNER, ELMER L. NICHOLSON, RICHARD A. PETTY, TOM BROOKS, AND WARREN I. KNOUFF, PLAINTIFFS v. McLEAN SECURITIES, INC., PURCELL CO., INC., (FORMERLY DIAMONDHEAD CORPORATION), PINEHURST, INCORPORATED, PINEHURST COUNTRY CLUB, INC., VICTOR PALMIERI AND COMPANY INCORPORATED, HOWARD C. MORGAN, TRUSTEE, STEVEN K. BAKER, TRUSTEE, B. CHARLES MILNER, TRUSTEE, CITIBANK, N.A., CHASE MANHATTAN BANK, N.A., THE FIRST NATIONAL BANK OF CHICAGO, FIRST PENNSYLVANIA BANK, N.A., FIRST NATIONAL STATE BANK, N.A., CROCKER NATIONAL BANK, AND WACHOVIA BANK AND TRUST COMPANY, N.A., DEFENDANTS

No COA99-737

(Filed 20 June 2000)

**1. Judgments— law of the case—prior declaratory judgment**

A remanded declaratory judgment arising from a dispute between the owners of Pinehurst Country Club and its members was remanded again with instructions to delete all language from the declaratory judgment that purported to give class protection to any person who received membership by transfer after 1 October 1980. In the first opinion, the Court of Appeals held that only those members who possessed membership as of 1 October 1980 were entitled to class protection.

BICKET v. McLEAN SEC., INC.

[138 N.C. App. 353 (2000)]

### 2. Judgments— consent—interpretation—findings

A remanded declaratory judgment arising from a dispute over membership privileges for the Pinehurst Country Club was again remanded for inclusion of a specified corrected paragraph where the trial court found that a paragraph of a consent judgment in the original action prohibited increasing initiation fees above the amount charged in 1982. The trial court should have made findings as to what the parties in 1980 intended to occur if Pinehurst, Incorporated ceased to exist. Because the court's findings indicating that the parties wished to keep the fees low is not supported by competent evidence and because several of the trial court's other findings suggest that the parties did not intend to restrict fee setting to Pinehurst, Incorporated, the court's conclusion that only Pinehurst, Incorporated could set the initiation fee is not supported by its findings of fact.

### 3. Judgments— consent—construction

The trial court on remand of a declaratory judgment construing a consent judgment between the members of Pinehurst Country Club and the owner of the club correctly removed a sentence which was a limitation on the Board of Directors' power to approve or disapprove membership requests, as required on the first remand. The court also correctly deleted from the declaratory judgment a paragraph dealing with the continued existence of amenities because the provisions of the original consent judgment were unambiguous.

### 4. Judgments— law of the case—remanded declaratory judgment—construction of consent judgment

The trial court did not err on remand of a declaratory judgment action to construe a consent judgment between the members of Pinehurst Country Club and the owners of the club by not determining whether a new class of membership had been established. However, the declaratory judgment was remanded for modification to delete restrictions that new classes of membership must have substantially different rights, privileges, and obligations.

### 5. Judgments— consent—remand—findings—reaffirmation

A trial court on remand correctly interpreted the term "Resort Guests" in a dispute between Pinehurst Country Club members and the owner of the club where the court, after hearing evidence and making findings of fact, reaffirmed its earlier

findings. The court's findings of fact are supported by competent evidence and support the court's conclusions.

**6. Appeal and Error— remand—issue not raised on first appeal**

The trial court did not err on remand of a declaratory judgment action arising from a dispute between the members of the Pinehurst Country Club and the owner of the club by not ruling on an issue which was not raised in the first appeal and which was controlled by language upheld elsewhere in this opinion.

Appeal by defendant Resorts of Pinehurst, Incorporated (now known as Pinehurst, Inc.) and plaintiffs from Order Modifying Declaratory Judgment entered 21 April 1999 by Judge F. Fetzer Mills in Moore County Superior Court. Heard in the Court of Appeals 16 February 2000.

*Kitchin, Neal, Webb, Webb & Futrell, P.A., by Henry L. Kitchin and Stephan R. Futrell, for plaintiff-appellees/appellants.*

*Van Camp, Hayes & Meacham, P.A., by James R. Van Camp and Michael J. Newman, Brown, McCarroll & Oaks Hartline, by Jackson D. Wilson II, and Smith, Helms, Mullis & Moore, L.L.P., by James G. Exum, Jr., for defendant-appellant/appellee Pinehurst, Inc.*

EDMUNDS, Judge.

This case is the continuation of a long-running dispute between members of Pinehurst Country Club and various owners of the club. In the late 1970s, Diamondhead Corporation (Diamondhead) purchased Pinehurst, Incorporated, which owned all of the public properties in the Village of Pinehurst, large undeveloped acreages, golf courses, and other recreational facilities. As a result of its purchase of Pinehurst, Incorporated, Diamondhead came into ownership of Pinehurst Country Club, Inc., which operated Pinehurst Country Club. Diamondhead developed and sold residential lots to buyers, who in turn could join Pinehurst Country Club upon approval of Pinehurst Country Club, Inc. When a disagreement arose between members of Pinehurst Country Club and Diamondhead as to certain membership privileges, the members filed a class action lawsuit to obtain a declaration of their membership rights. The class action ended when the parties agreed to a Final Consent Judgment on 19 December 1980.

In 1982, Pinehurst, Incorporated, the owner of Pinehurst Country Club, merged into Diamondhead's affiliated corporation, Purcell Co., Inc. Purcell Co., Inc. immediately transferred all assets and stock of Pinehurst Country Club to Pinehurst Inc. As a result of these transactions, Pinehurst, Incorporated no longer existed as a legal entity as of that date.

Diamondhead also owned and operated a resort hotel and associated villas, condominiums, and conference center known as Pinehurst Hotel and Country Club, later called Pinehurst Resort and Country Club. In 1984, defendant Resorts of Pinehurst, Inc., purchased Pinehurst Resort and Country Club and succeeded to the interests of the original owner-defendants. Resorts of Pinehurst, Inc., changed its name in 1998 to Pinehurst, Inc., which is not to be confused with Pinehurst, Incorporated or with Pinehurst Inc., the immediate successor of Pinehurst, Incorporated.

Around 1990, a dispute arose between Resorts of Pinehurst, Inc., and members of the Pinehurst Country Club over certain provisions of the 1980 Final Consent Judgment. The parties filed an action for declaratory judgment asking the trial court to construe contested sections of the Final Consent Judgment. The trial court issued its judgment on 28 December 1994, and both parties appealed. This Court affirmed in part, reversed in part, and remanded the case to the trial court to take action consistent with its directives for interpreting the Final Consent Judgment. *See Bicket v. McLean Securities, Inc.*, 124 N.C. App. 548, 478 S.E.2d 518 (1996) (hereinafter *Bicket I*), *disc. review denied*, 346 N.C. 275, 487 S.E.2d 538 (1997). The trial court accordingly issued an "Order Modifying Declaratory Judgment" on 21 April 1999. Both parties appeal from that modifying order.

## I. Defendant's Appeal

### A. Final Consent Judgment—Protected Class

[1] Defendant first contends the trial court failed to comply with our holding in *Bicket I*. One of the issues this Court addressed in *Bicket I* concerned identifying those members who fell under the protection of the 1980 Final Consent Judgment. The 1994 Declaratory Judgment issued by the trial court stated:

> The rights and privileges of each subclass of membership referred to and described in paragraph 6 of the Final Consent Judgment are not limited to Pinehurst Country Club members as individuals. Those rights are extended to each subclass of mem-

BICKET v. McLEAN SEC., INC.

[138 N.C. App. 353 (2000)]

bership described in the Final Consent Judgment and are intended to include, and do include any membership that was in existence as of the entry of the Final Consent Judgment, *or which has come into existence within the various enumerated subclasses since the entry of the Final Consent Judgment.*

. . . Any membership that was in existence at the time of the Final Consent Judgment, or that has been sold, transferred, or approved after the Final Consent Judgment, wether [sic] by direct purchase or transfer in any one of the subclasses of membership enumerated in paragraph 6 of the Final Consent Judgment, is entitled to the protections set out in the Final Consent Judgment.

(Emphasis added.)

In *Bicket I*, defendant assigned as error the "trial court's conclusion that members who joined the Pinehurst Country Club after the entry of the Final Consent Judgment are within the class protected by that agreement." *Id.* at 562, 478 S.E.2d at 526. In addressing this assignment of error, we held that the Final Consent Judgment

limits the class to those holding membership as of 1 October 1980. The trial court, however, extended the protections of the Final Consent Judgment not only to those within the classes of membership as of the entry of that judgment, but also to those memberships which have come into existence since the Final Consent Judgment.

*Id.* Therefore, we remanded the case for modification of the Declaratory Judgment "to limit the protections of the Final Consent Judgment to only those holding membership as of 1 October 1980." *Id.*

Upon remand, the trial court in its Order Modifying Declaratory Judgment struck the language from the original Declaratory Judgment that purported to extend protection to any memberships that came into existence after 1 October 1980 and limited protection to "those holding membership in Pinehurst Country Club, Inc. as of 1 October 1980." However, the trial court also modified the judgment as follows:

It is further ordered, that the second sentence of the fourth paragraph of Section "1 PROTECTED CLASS"[] is modified and rewritten to state: "Any membership that was in existence as of October 1, 1980, and has been transferred after the Final Consent

Judgment in any one of the subclasses enumerated in Paragraph 6 of the Final Consent Judgment is entitled to the protection set out in the Final Consent Judgment."

It is further [o]rdered that the sixth paragraph of Section "1 PROTECTED CLASS" is hereby modified and rewritten to state as follows: "The classification of those memberships listed in Paaragraph [sic] 6(a),(b),(c),(d), and (f) that were in existence as of October 1, 1980 are protected by the terms of the Final Consent Judgment regardless of whether transferred before or after October 1, 1980."

Defendant contends that the trial court's Order Modifying Declaratory Judgment does not comply with our mandate because the quoted provisions extend class protection to memberships that were in existence before 1 October 1980 and have been transferred to new persons after 1 October 1980. Plaintiffs respond that *Bicket I* did not address the transfer of memberships, and consequently the portion of the Declaratory Judgment dealing with that issue is the law of the case.

Upon a close review of the record and our opinion in *Bicket I*, we conclude that this Court did address the issue of transferred memberships in *Bicket I*. In a section titled "Protected Class," the Declaratory Judgment considered the question of who was protected. Although this section did not distinguish between those in the protected class in terms of how they became members, it did acknowledge that membership might result from sale, transfer, or other means. Therefore, the issues of membership in the protected class and the means of obtaining that membership were intertwined when first brought before this Court. The record reveals that both parties' briefs for *Bicket I* addressed the issue of whether memberships in existence before 1 October 1980 but transferred after 1 October 1980 were in the protected class. Therefore, we agree with defendant that in *Bicket I* we reached the issue as to whether those who obtained membership after 1 October 1980 are members of the protected class and held that only those members who possessed a membership as of 1 October 1980 were entitled to class protection. We further conclude that this holding was intended to eliminate all language from the Declaratory Judgment that offered protection to those who obtained memberships by means of transfer after 1 October 1980.

Because we ruled on this issue in *Bicket I*, we do not now attempt a reinterpretation of the Consent Judgment. "Once an appellate court

has ruled on a question, that decision becomes the law of the case and governs the question not only on remand at trial, but on a subsequent appeal of the same case." *N.C.N.B. v. Virginia Carolina Builders*, 307 N.C. 563, 566, 299 S.E.2d 629, 631 (1983) (citations omitted).

> "As a general rule, when an appellate court passes on questions and remands the case for further proceedings to the trial court, the questions therein actually presented and necessarily involved in determining the case, and the decision on those questions become the law of the case, both in subsequent proceedings in the trial court and on a subsequent appeal, provided the same facts and the same questions, which were determined in the previous appeal, are involved in the second appeal."

*Transportation, Inc. v. Strick Corp.*, 286 N.C. 235, 239, 210 S.E.2d 181, 183 (1974) (citations omitted). The trial court erred by not fully modifying the Declaratory Judgment in accordance with the mandate of this Court. Therefore, we remand this issue to the trial court with instructions to delete all language from the Declaratory Judgment that purports to give class protection to any person who received membership by transfer after 1 October 1980.

### B. Final Consent Judgment—Paragraph 6

**[2]** Defendant's second contention is that the trial court erred in finding that Paragraph 6(h) of the Final Consent Judgment prohibits defendant from increasing initiation fees for membership at Pinehurst Country Club above $3,000, the amount "Pinehurst, Incorporated" charged to property purchasers in 1982. Paragraph 6(h) of the Final Consent Judgment reads:

> (h) Whenever the term "transfer fee" is used herein, the amount of the transfer fee shall not exceed thirty percent of the then current initiation fee for the applicable class of membership transferred. (In the case of a Resident membership, "current initiation fee" refers to the amount then being charged to property purchasers from Pinehurst, Incorporated.)

A transfer fee is charged to a purchaser who buys property in the Village of Pinehurst from a selling member and also receives a transferred membership from the selling member. Because of the relationship between initiation fees and transfer fees, an issue arose as to whether the initiation fee could be increased. The trial court's Declaratory Judgment interpreted Paragraph 6(h) to mean that the

"current initiation fee" was the initiation fee charged to the last person who purchased property from Pinehurst, Incorporated, which went out of existence in 1982. Because the initiation fee charged to the last purchaser of property from Pinehurst, Incorporated before it ceased to exist was $3,000, the trial court determined the only allowable transfer fee to be $900.

On appeal, we held in *Bicket I* that the "cessation of Pinehurst, Incorporated" made Paragraph 6(h) ambiguous. *Bicket I*, 124 N.C. App. at 559, 478 S.E.2d at 524. Because the trial court had not made findings as to the parties' original intent and had based its conclusions " 'upon the language . . . of the Final Consent Judgment, and in consideration of the evidence presented,' " we remanded this issue for appropriate findings of fact, authorizing the trial court to consider parol evidence in ascertaining the original parties' intent as to the meaning of the paragraph. *Id.* (alteration in original). In its Order Modifying Declaratory Judgment, the trial court made twenty-two findings of fact and again concluded that the transfer fee was $900. Pursuant to our mandate in *Bicket I*, the trial court on remand should have made findings of fact as to what the parties, in 1980, intended to occur if Pinehurst, Incorporated ceased to exist. Instead, the trial court focused on (1) whether the omission in Paragraph 6(h) of language pertaining to "successors and assigns" of Pinehurst, Incorporated was deliberate or accidental, and (2) what the parties intended regarding the general level of fees, i.e., whether they should be generally high or low.

The scope of our review of the trial court's findings is (1) whether there is competent evidence in the record to support the findings of fact and (2) whether these findings justify the court's legal conclusions. *See Insurance Co. v. Allison*, 51 N.C. App. 654, 657, 277 S.E.2d 473, 475 (1981). Paragraph 5 of the Final Consent Judgment states that plaintiffs' "rights are not subject to alteration by the defendants Diamondhead Corporation, Pinehurst, Incorporated, Pinehurst Country Club, Inc., or any of their parent corporations, *subsidiary corporations, successors, or assigns*." (Emphasis added.) Similarly, Paragraph 7 sets out members' rights to use "the facilities and properties of Pinehurst, Incorporated, and its subsidiaries, so long as said properties and facilities are operated and maintained by Pinehurst, Incorporated, its parent corporations, *subsidiary corporations, successors, or assigns* . . . ." (Emphasis added.)

Plaintiffs contend and the trial court held that because language relating to successors or assigns did not also appear in Paragraph

**BICKET v. McLEAN SEC., INC.**

[138 N.C. App. 353 (2000)]

6(h), the parties did not intend for successors or assigns of Pinehurst, Incorporated to have the capability to increase transfer fees. However, not every section in the Final Consent Judgment explicitly provided that powers granted to Pinehurst, Incorporated would be held by its successors or assigns. A separate section of Paragraph 7 also contains language pertaining to fees for the use of certain facilities:

Such fees (other than dues) are subject to change at any time, in the discretion of the defendant Pinehurst, Incorporated.

The use of the above facilities and properties [excluding the use of the Members Private Clubhouse except as set out in subparagraph (h) above] may be extended by Pinehurst, Incorporated to future purchasers of property from or through Pinehurst, Incorporated, its subsidiaries and affiliates . . . upon such terms and conditions as Pinehurst, Incorporated shall determine.

(Brackets in original.) Despite the absence of "successor or assigns" language in this section, we believe it inconceivable that control of the fees and facility usage described in the quoted section died with Pinehurst, Incorporated in 1982. Consequently, explicit "successor or assigns" language is not required as a condition precedent to a finding that particular rights and duties assigned to Pinehurst, Incorporated in the Final Consent Judgment continued after that entity ceased to exist in 1982. Therefore, the absence of "successor or assigns" language in Paragraph 6(h) of the Final Consent Judgment does not mandate a finding that initiation and transfer fees were frozen at the time of Pinehurst, Incorporated's dissolution and could not be changed by a successor organization.

This interpretation of Paragraph 6(h) as allowing successors to Pinehurst, Incorporated to change initiation fees is reinforced by an examination of the original parties' course of conduct after the Final Consent Judgment was signed.

In ascertaining the parties' intent, courts may consider the language, subject matter and purpose of the contract, as well as the situation of the parties at the time, and may even read into a contract such implied provisions as may be necessary to effect the parties' intent. Courts also must give consideration to evidence of the parties' own interpretation of the contract prior to the controversy.

*Investment Trust v. Belk-Tyler*, 56 N.C. App. 363, 367, 289 S.E.2d 145, 148 (1982) (internal citation omitted). "In contract law, where the language presents a question of doubtful meaning and the parties to a contract have, practically or otherwise, interpreted the contract, the courts will ordinarily adopt the construction the parties have given the contract *ante litem motam.*" *Davison v. Duke University*, 282 N.C. 676, 713-14, 194 S.E.2d 761, 784 (1973) (citations omitted). We focus on the behavior of plaintiffs because, due to the changes in ownership, the instant corporate defendant is not the same entity that agreed to the Final Consent Judgment.

When Pinehurst, Incorporated ceased to exist in 1982, the initiation fee was $3,000 and the transfer fee was $900. All assets of Pinehurst Country Club were transferred to Pinehurst Inc., which ran the club from 1982-1984. In 1983, Pinehurst Inc. updated the Pinehurst Country Club's "Rules and Regulations" to reflect that the initiation fee for a resident member was $5,000, making the transfer fee $1,500. The document further states that "[t]hese rules and regulations . . . [w]here relevant, are subject to the provisions of the Final Consent Judgment in Bicket et al. vs. McLean Securities, Inc., et al." Mr. Roy C. Hackley signed the "Rules and Regulations" as the President of Pinehurst Country Club. According to the record, Mr. Hackley was a member of the protected class, was one of the "primary persons representing the plaintiffs and the membership" when the Final Consent Judgment was signed, and had "worked long and hard hours" to insure that the members' rights in the Final Consent Judgment were protected in his role as Chairman of the members' Standby Committee responsible for "oversee[ing] the Consent Agreement." There is no evidence that any member or representative of plaintiffs' class objected to the increased initiation and transfer fees.

In 1984, defendant purchased Pinehurst Country Club. Since that time, the initiation fee has risen to $15,000, making the transfer fee $4,500. Although the parties dispute details pertaining to increases after 1984, we need not address these details. The fact that plaintiffs did not protest the increase reflected in the 1983 Rules and Regulations, after Pinehurst, Incorporated went out of existence, satisfies us that the original parties intended that successors to Pinehurst, Incorporated would be able to control initiation and transfer fees.

Having concluded that neither the terms of the Final Consent Judgment nor the conduct of the parties precludes the successors of

Pinehurst, Incorporated from changing initiation fees, we now turn to the trial court's examination of the parties' intent as to the general level of the fees. Finding number fourteen of the Order Modifying Declaratory Judgment reads: "The parties to the Final Consent Judgment intended to control the size of the transfer fee charged for transferring a membership from one member to another, so that the resort owner could not effectively prohibit transfers of memberships by raising transfer or initiation fees." Defendant contends, and we agree, that no evidence in the record supports the trial court's finding. Although Foster Fludine, a member of the Defense Committee formed after the parties agreed to the Final Consent Judgment, testified that he thought the language meant that no entity other than Pinehurst, Incorporated could set the fees, he did not become a member of the club until approximately 1984 and offered no testimony as to the intent in 1980 of the original parties.

While the Final Consent Judgment states that the transfer fee is limited to thirty percent of the initiation fee, indicating that the size of the transfer fee is controlled in some manner, there is no evidence that the parties intended to control the transfer fee "so that the resort owner could not effectively prohibit transfers of memberships by raising transfer or initiation fees." The trial court's finding implies that the parties in 1980 intended for fees to remain low, so that memberships could be transferred freely. However, the proper inquiry for the trial court was not whether fees were to be "high" or "low," but whether any entity other than Pinehurst, Incorporated could set the fees at issue.

The trial court found in finding number one that Pinehurst, Incorporated was "experiencing a severe financial crisis" at the time the Final Consent Judgment was entered. In finding number five, the trial court found that this crisis "led the plaintiff[s] . . . to seek ways to prevent the sale of large blocks of memberships without dues or fees, simply in order [for Pinehurst, Incorporated] to create cash flow." The trial court continued, noting plaintiffs' concern that selling large blocks of memberships would

> overwhelm the ability of Pinehurst Country Club's facilities to accommodate members['] needs. Thus, the parties did not intend to base determination of the "current initiation fee" on membership initiation charges or fees that prevail at other country clubs, nor on economic conditions or on market variables that were not listed in the Final Consent Judgment. *They sought to control the*

> demands on club facilities by tying the transfer fee to the initi-
> ation fee charged to the owner of the lots in the Village of
> Pinehurst.

(Emphasis added.)

To prevent such large-scale sale of memberships, logic dictates that the parties would keep initiation and transfer fees high to discourage promiscuous selling, and in fact, testimony in the record reflects that members wanted to set *minimum* initiation fees below which Pinehurst, Incorporated could not offer memberships. Neither the witnesses nor Paragraph 6(h) of the Final Consent Judgment indicates that the parties had any interest in controlling the *maximum* initiation or transfer fees.

Not only does finding number five indicate the parties' intent to keep fees relatively high, it also demonstrates the parties' intent to tie the transfer fee perpetually to the initiation fee "charged to the owner of the lots in the Village of Pinehurst." Under Paragraph 6(g) of the Final Consent Judgment, only landowners in the Village may become "Resident" members. Thus, an initiation fee may be charged only to new property owners in the Village who wish to become members. The only way to maintain fees at a level such that large-scale fluctuations in membership would not occur and overwhelm the club's facilities would be to allow the entity in charge of memberships to raise the initiation fee if necessary.

Consequently, the trial court's ultimate conclusion—that only Pinehurst, Incorporated could set the initiation fee—is antithetical to the court's finding of fact number five. In granting the power to "control the demands on club facilities," which includes the power to raise fees and thus lower demand, the parties also must have intended that entities other than the now-defunct Pinehurst, Incorporated would be able to set the fees in the future. Because the trial court's finding of fact indicating that the parties wished to keep the fees low is not supported by competent evidence, and because several of the trial court's other findings suggest that the parties did not intend to restrict fee-setting to Pinehurst, Incorporated, we find that the trial court's conclusion of law on this issue is not supported by its findings of fact.

The trial court's properly supported findings, in conjunction with the parties' course of conduct, lead directly to the conclusion that the parties intended to allow the alteration of the initiation fee regardless

of whether Pinehurst, Incorporated continued to exist. We therefore reverse the decision of the trial court and remand for entry of corrected judgment. *See Hofler v. Hill and Hofler v. Hill*, 311 N.C. 325, 329, 317 S.E.2d 670, 673 (1984) (holding conclusion of law fully reviewable on appeal and may be reversed if erroneous); *Prime South Homes v. Byrd*, 102 N.C. App. 255, 258, 401 S.E.2d 822, 825 (1991) (explaining appellate court not bound by inferences or conclusions trial court draws from findings of fact). The trial court is ordered to replace Paragraph 3 of its 28 December 1994 Declaratory Judgment with the following paragraph:

3. TRANSFER

An "initiation fee" is the charge for the purchase of a membership directly from Pinehurst Country Club, Inc. A "transfer fee" is the charge for the transfer of a membership from one member to another. "Current initiation fee," as used in Paragraph 6(h) in the Final Consent Judgment, as applicable to Resident Members, means that initiation fee charged by the entity owning Pinehurst Country Club, Inc., at the time of the application to purchase a membership.

The Court hereby further finds from the evidence and the Final Consent Judgment that a "Life" membership carries a $10,000.00 initiation fee; that a "Charter" membership carries a $5,000.00 initiation fee plus such increases as are allowed by the Consumer Price Index language in Paragraph 6(i) of the Final Consent Judgment; that the initiation fee for "Founder" membership is $3,000.00 plus such increases as are allowed by the Consumer Price Index language in Paragraph 6(i) of the Final Consent Judgment; and that the initiation fee for "Resident" class memberships (Full, Active, and Inactive) shall be set by the entity owning Pinehurst Country Club, Inc.

II. Plaintiffs' Appeal

A. Approval of Board of Directors

[3] Plaintiffs contend that the trial court erred in deleting the entire second paragraph of the 1994 Declaratory Judgment titled "Approval of Board of Directors." This paragraph dealt with the Board of Directors' approval of applicants for membership. Plaintiffs argue that the trial court should not have deleted the last sentence of the paragraph, which read:

This approval or disapproval of the Board of Directors shall be based on the standards of reputation, good moral standards, and creditworthiness previously established in the Rules and Regulations of Pinehurst Country Club, Inc., and shall not be based on arbitrary considerations or policy decisions forestalling an individual membership application, or acceptance, or precluding, or denying approval as to any subclass as a group.

We held in *Bicket I*:

Unlike the trial court's interpretation, the express and unambiguous language of the Final Consent Judgment contains no limitation on the Board's approval or disapproval. . . . Accordingly, we remand this issue to the trial court for modification of the Declaratory Judgment to delete the limitation on the Board's approval or disapproval of individual requests for membership in each of the subclasses of membership set out in paragraph 6 of the Final Consent Judgment.

*Bicket I*, 124 N.C. App. at 559-60, 478 S.E.2d at 525. The language that plaintiffs now claim was removed erroneously is a limitation on the Board's power to approve or disapprove membership requests. Therefore, the trial court correctly deleted this sentence.

[4] Plaintiffs next argue that the trial court erred in deleting Paragraph 7 of the Declaratory Judgment. This paragraph, entitled "Obligation to Insure Continued Existence of Amenities," addressed defendant's responsibility to maintain properties and facilities listed in the Final Consent Judgment. In *Bicket I*, we found that the trial court's interpretation of this paragraph was "unnecessary because the beginning provisions of paragraph 7 of the Final Consent Judgment are unambiguous." *Id.* at 557, 478 S.E.2d at 523. Holding that the plain language of the Final Consent Judgment controlled, we remanded "to the trial court for modification of the Declaratory Judgment consistent with this opinion." *Id.* Upon remand, the trial court focused on our holding that the provisions of the Final Consent Judgment were unambiguous and, in its Order Modifying Declaratory Judgment, deleted Paragraph 7 in its entirety. Upon review of the Declaratory Judgment, we agree with the trial court that Paragraph 7 is unnecessary. The trial court was correct in striking this paragraph; this assignment of error is overruled.

## B. Additional Classes of Membership

Plaintiffs next contend the trial court erred in failing to determine whether a new class of membership had been established. However,

this issue was resolved in *Bicket I*. The Final Consent Judgment permitted Pinehurst Country Club, Inc. to establish additional classes of membership. In 1985, a "two tier" category of membership was created. In the 1994 Declaratory Judgment, the trial court found that "[a] new class of membership . . . cannot be created without properly notifying those individuals or classes of memberships whose rights will be affected by the creation of the new class of membership." On appeal, we disagreed and "remand[ed] for further modification of the Declaratory Judgment . . . to eliminate the requirement that all classes of membership affected by the creation of a new class be notified in writing prior to its creation." *Id.* at 560, 478 S.E.2d at 525.

In addition, the trial court found in its 1994 Declaratory Judgment that defendant did not comply with the Final Consent Judgment in establishing its "two tier" class of membership because this new class did not have "substantially different rights and privileges and obligations from those classes of membership set forth in paragraph 6 of the Final Consent Judgment." On appeal, we disagreed and held: "These qualifications are beyond the scope of the express and unambiguous language of the provision in question. We therefore remand this issue for modification of the Declaratory Judgment to delete the restrictions that new classes of membership must have substantially different rights, privileges and obligations . . . ." *Id.* On remand, the trial court entered its Order Modifying Declaratory Judgment, which complied with our instructions as to this issue. Because we addressed and resolved this issue in *Bicket I*, that decision is "the law of the case." *N.C.N.B.*, 307 N.C. at 566, 299 S.E.2d at 631 (citations omitted). This assignment of error is overruled.

### C. "Resort Guest"

[5] Plaintiffs next contend the trial court erred in its interpretation of the term "Resort Guest." In the 1994 Declaratory Judgment, the trial court determined that "Resort Guest" as used in the Final Consent Judgment meant "any guest of the owner of the Pinehurst Country Club regardless of whether that guest is a paying customer at the Pinehurst Hotel." On appeal, we found the term "Resort Guest" to be ambiguous and remanded to the trial court for consideration of parol evidence and resulting findings of fact.

After hearing evidence and making findings of fact on remand, the trial court reaffirmed its earlier finding that "Resort Guests" do not have to be customers of the Pinehurst Hotel. These findings are based on the conduct of the owners of Pinehurst Country Club before

and after the Final Consent Judgment. "[T]he findings of fact entered by a trial court are conclusive on appeal if they are supported by any competent evidence, even though there may be evidence in the record to support contrary findings . . . ." *Auto Supply v. Vick*, 303 N.C. 30, 37, 277 S.E.2d 360, 365 (1981) (citations omitted). There is competent evidence in the record that, both before and after 1980, the owners of Pinehurst Country Club permitted guests of various hotels in the Pinehurst area to play on its golf courses using tee times reserved for resort guests. Because the trial court's findings of fact are supported by competent evidence and they support the trial court's conclusions of law, we affirm the trial court's ruling. This assignment of error is overruled.

## D.  Associate Member Program

[6] In their last assignment of error, plaintiffs allege that the trial court failed to rule on the Associate Members program. Resorts of Pinehurst's parent company, Club Corp. International, participated in an Associate Members program, which allowed participating members to play at Pinehurst Country Club. There is no indication in *Bicket I* that this issue was appealed. We have also examined the briefs submitted to the Court in *Bicket I* and find no argument on this issue. However, we believe the trial court's interpretation of "Resort Guest" controls this issue. As we held above, resort guests do not have to stay at the Pinehurst Hotel in order to play golf there. This assignment of error is overruled.

Defendant's appeal—reversed with instructions.

Plaintiffs' appeal—affirmed.

Judges LEWIS and JOHN concur.